# CHARLESTON.

## STATE v. BERKELEY.

Submitted September 5, 1895—Decided Dec. 4, 1895.

1. PHYSICIAN'S PRESCRIPTION—INTOXICATING LIQUOR.

Under Code, c. 32, s. 7, if a physician gives a prescription to enable one to obtain liquor from a druggist as medicine, either stating that it is, or that he believes it is, absolutely necessary as a a medicine, and not as a beverage, when he either knows, or believes, or has reason to believe it is not so necessary, or when he does not know it to be so necessary, he violates said statute, and is guilty of the offense it creates. The physician must act in entire good faith. It is his duty to examine and ascertain whether the liquor is absolutely necessary as a medicine.

2. PHYSICIAN'S PRESCRIPTION—INDICTMENT—VARIANCE.

An indictment describes a prescription as stating that the liquor is absolutely necessary as a medicine, whereas the prescription states that the physician believes it to be so necessary. There is no variance between indictment and evidence because of the word "believe" in the prescription.

3. PHYSICIAN'S PRESCRIPTION—INTOXICATING LIQUOR.

Such a prescription names A. as the person needing such liquor, when he does not need it, and the physician knows he does not need it; but A. is getting it for the use of another. The statute is violated, though that other person may so need the liquor as a

medicine. The prescription must name the person for whom the liquor is prescribed.

ATTORNEY-GENERAL T. S. RILEY and W. B. CORNWELL for the state, cited Code, c. 32, ss. 6, 7; 34 W. Va. 137.

MONROE & WOODS for defendant in error, cited Code, c. 32, s. 6; 23 W. Va. 797; 34 W. Va. 137, 139.

BRANNON, JUDGE:

Berkeley was tried and acquitted in the Circuit Court of Hampshire county upon an indictment accusing him of giving false prescriptions as a physician to a druggist to enable a person to purchase spirituous liquors, and the state appeals.

On the trial the state offered to give the prescriptions in evidence, but they were rejected by the court, and the question is whether their exclusion was proper.

The state proved that Berkeley, as a physician, had given Whiteacre, a young man, "on the representation of White-acre that he had a delicate aunt in town, and they would need some whisky going home through the snow storm," three prescriptions for one pint of whisky each, between the hours of 1 p. m. and 6 p. m., of February 2, 1895, to a certain drug store, charging twenty five cents for each one, on which the druggist sold Whitacre the amount of whisky called for by the prescriptions; and then the state offered the prescriptions in evidence.

To sustain its case, the state had to prove the giving of the prescriptions, and that they contained false statements, and it was entitled to use the prescriptions as the primary and highest evidence upon those facts.

Here I might stop. But it might be thought that I failed to touch the point on which the circuit court acted, or may have acted; that is, the character of the prescriptions. I think the prescriptions, whatever their character, ought to have gone before the jury as items of evidence in the case; but it may be said that the presence of the word "believing," in the prescriptions, called for their exclusion, as in them the physician, after prescribing for Whitacre one pint of whisky, said "I certify that the above is prescribed

as a medicine for the person above named, believing it to be absolutely necessary as such." It may have been thought on the trial that to charge a physician with giving a false prescription, he must, in his prescription, say positively that the liquor is absolutely necessary as a medicine, and not as a beverage; not merely that he believes such to be the case; that the druggist may be punished for selling under such an insufficient prescription, but not the physician, as he has not stated as a fact the need of the liquor for medicinal purposes, but only his belief.

Code, c. 32, ss. 6, 7, provides that a druggist shall not sell spirituous liquors except on a written prescription from a physician that they are absolutely necessary as a medicine for the person named in the prescription, and not as a beverage, and punishes the physician for giving the prescription and making the statement falsely. The legislature shows in this statute a fixed and plain purpose to prohibit druggists from selling liquor as a beverage, to prevent drug stores from becoming bar-rooms, as it limits sales to cases where the liquor is absolutely necessary as medicine, and to accomplish this purpose requires in every sale a certain prescription; and, as a further means of carrying out its public policy in order to prevent imposition upon the druggist, and, more important still, to prevent violation of its policy and law, it punishes the physician for fraudulent practice in false prescriptions. The act of the physician declared by the statute an offense is one of fraud, deceit, or misrepresentation, and is to be tested by principles testing the presence of fraud, deceit, or misrepresentation in contracts, false pretense, perjury, and the like.

Fraud is shown either by establishing a *suggestio falsi* (that is, a suggestion or statement of what is false) or a *suppressio veri* (that is, the suppression of what is true). *Crislip* v. *Cain*, 19 W. Va. 439. Where a party intentionally or by design misrepresents a material fact, or produces a false impression, in order to mislead another, or entrap or cheat him, or obtain undue advantage of him, there is positive fraud. The misrepresentation may be as well by deeds or acts as by words; by artifices to mislead as well as by positive assertions. If a party states a fact for fraudulent

purpose, which is untrue, without knowing it to be true, and does not believe it to be true, this is legal and moral fraud. *Dickinson* v. *Railroad Co.*, 7 W. Va. 390, points 17, 18, of syllabus. Whether the party misrepresenting a material fact knew it to be false, or made the assertion without knowing whether it was true or false, is immaterial, for the affirmation of what one does not know or believe to be true is equally in morals and law as unjustifiable as the affirmation of what is known to be positively false. 1 Story, Eq. Jur. 193. A false representation is one made with knowledge of its falsity—made *scienter*, in law phrase. "A false representation may be made *scienter*, in contemplation of law, in any of the following ways: (1) With actual knowledge of its falsity; (2) without knowledge either of its truth or falsity; or (3) under circumstances in which the person making it ought to have known, if he did not know, of its falsity." 1 Bigelow, Frauds, 509. "It is perjury where one swears willfully and corruptly to a matter which he, according to his own lights, has no probable cause for believing, since a man is guilty of perjury if he knowingly and willfully swears to a particular fact without knowing at the time the assertion is true, supposing his purpose is corrupt. Hence it is a good assignment of perjury that the defendant swore that he 'thought' or 'believed' a certain fact, whereas in truth and fact he thought and believed the contrary, and had no probable grounds for what he swore. It has just been seen that falsity consists in knowingly affirming a condition without probable cause. Here we must again accept a position so often vindicated in these pages that probable cause must be estimated, not from the jury's standpoint, nor from the judge's, but from the defendant's. On the other hand, the fact sworn to may have been true; but, if the defendant swore to it willfully and corruptly, not knowing it to be true, or not having probable cause, according to his own lights, for believing it to be true, he is guilty, as stated in the last section, of perjury. On the other hand, if he swears honestly to a fact or belief, with probable cause, according to his own lights, for the truth of his belief, he is not guilty of perjury, though his oath was untrue. Hence it is admissible to prove reception

of such information by the defendant as gave him probable ground for his oath." 2 Whart. Cr. Law, §§ 1246-1248. "One commits perjury where he swears falsely to a matter, the truth of which, though he believed, yet he had no probable cause for believing, and might with little trouble have ascertained the fact." 3 Greenl. Ev. § 200.

These principles will, I think, solve most of the cases that may arise upon indictments for giving false prescriptions. We must not give the statute too rigid a construction as a penal statute, and thus defeat the intention of the legislature so plainly spoken by the letter and spirit of the chapter. It concerns the state's revenue, because, if druggists sell for beverage purposes, paying no license imposed on retailers, it tends to deprive the state of revenue which might be otherwise derived from retailers; and especially b cause section 49 enacts that these provisions "shall in all cases be construed as remedial, and not penal."

A physician who states in his prescription that the liquor is absolutely necessary as a medicine, and not as a beverage, knowing that it is not necessary as a medicine, or having reason to believe from the facts and circumstances that it is not necessary, or not knowing whether it is so necessary or not for want of information to justify the opinion that it is necessary, violates this statute. He must not give a prescription simply to get his pittance of a fee or his large fee. He must not aid the party thirsty for liquor as a beverage, or the druggist anxious to sell, to make a purchase and sale colorably legal under a sham prescription. The statute commands him to act with entirely good faith. He ought, from personal examination of the patient, or at least on some stable ground, to be able to say, and say, that the liquor is absolutely necessary as a medicine, and not as a beverage; and not shirk and evade responsibility by saying he believes it to be so necessary, as the statute requires him to know enough of the case to enable him to say that it is absolutely necessary as a medicine. There may be question whether he can give a prescription on any other than personal knowledge of the necessity, but perhaps he could on information in entirely good faith, if such necessity exists. He risks the information. If his prescription

do not absolutely certify that the liquor is necessary as a medicine, but only that he believes it necessary, and he knows or believes to the contrary, or has reason to believe to the contrary, or has no good reason to believe it is so necessary—in other words, does not know whether it is so necessary or not—he violates the statute. The word "believe" or other qualifying word does not save him. He can not say that his prescription only states a belief, whereas the one which the statute requires is in positive language as to the medical call for the liquor, and that he is not guilty of infraction of the statute because of its non-literal concurrence with the statute. If he gives a prescription calculated to accomplish a wrongful sale, and it does so, he is guilty, even though the druggist may be indictable also for acting on such a prescription. So the prescription be false, it is enough. It is the physician's duty to know—to ascertain—whether the necessity exists. In the language in Bigelow, Frauds, 516, "here there is a duty to know, and the party has asserted for knowledge what he must have known he ought not even to have believed;" and so if he certifies his belief when there is no sufficient ground for belief, on grounds which he must have known would not warrant even belief.

The word "absolutely," in the statute, does not refer to the evidence or ground on which the physician acts, but to the degree of the need of the patient for the liquor. If the physician have ever so much evidence before him on which to form his judgment of the necessity of the liquor, and yet the case, on that examination or evidence, is not such as shows an absolute need of the liquor, he can not give the prescription; for the letter of the statute is that the liquor must be absolutely needed as a medicine. No less a need justifies a prescription to even a patient. The policy of the lawmaker voiced in the act is, as indicated by Judge Snyder in *State* v. *Tetrick*, 34 W. Va. 139 (11 S. E. 1002) to limit the use of liquor to extreme cases even in sickness. Patients thirsty for liquor may simulate a necessity. Physicians, but for this rigid limitation or curb, might gratify that thirst; and prescriptions of intoxicating liquors may beget a desire which will end in the patient's ruin. Hence

the policy and letter of the statute. So it is written, and courts and all must obey it.

I think that in any view, the prescriptions ought to have been admitted, to let the jury see what statement they made, and to enable it to say, under all the circumstances, whether such statement was true or false, whether the prescriptions were issued in that good faith demanded by the statute, or were sham and colorable, and intended to shelter a sale really violative of law. These three prescriptions were a necessary and essential part of the sum total of the evidence to portray the case to its triers It was for those triers—the jurors—to look at those prescriptions which accomplished the three sales, and their statements, and to say whether three prescriptions given by the same physician for one pint of liquor each, to a young man twenty one years of age, given all three between 1 and 6 o'clock, p. m. of the same day, on the mere statement of that young man that he had a delicate aunt in town, and they would need some whisky going home through the snowstorm, and no other necessity for it even suggested than the snowstorm, without seeing or knowing himself the condition of the lady, so far as appears, and charging the small fee of twenty five cents for each prescription, showed good or bad faith on the part of the physician, or showed whether real necessity for the liquor as a medicine existed or did not exist, or showed sufficient or insufficient ground for the belief expressed in the prescription that the liquor was absolutely necessary as a medicine, and not as a beverage. These were jury questions. Indeed, it was a question for the jury to say, under all the circumstances, whether the word "believing" was intended as a mere expression of opinion or an affirmation of fact. *Simar* v. *Canaday*, 13 Am. Rep. 523. Under this statute, is the word to be taken merely as opinion? Is there a solid distinction between human knowledge and belief? Practically and metaphysically the difference is only in degree of conviction, on the evidence of the fact. Belief is the conclusion of the mind as to the existence of a fact. It may be weak or strong belief. If strong, decided conviction, we may call it knowledge, and yet it is only belief. 2 Am. & Eng. Enc. Law, 164.

But the exclusion of the prescriptions from the jury is sought to be vindicated on the theory of variance between the indictment and the prescriptions, the indictment charging that the prescriptions stated that the whisky was absolutely necessary as a medicine for Whitacre, and not as a beverage, whereas the prescriptions in fact state that the physician believed it to be necessary. Is there a variance here? There are two modes of describing written instruments under the law of pleading; one according to their tenor, the other according to their effect. Under the first, the conformity of the instrument to its description in the pleading must be exact, because the pleading purports to give it in *ipsissimis verbis;* but under the second the description in the pleading need not give the words or form of words, but only its legal effect. The latter it must give. 4 Minor, Inst. 578. Now, when a physician, under the statute in question, gives a prescription certifying in the language of the statute that the liquor is absolutely necessary as a medicine, and not as a beverage, what is it but his professional opinion, finding, or belief, on diagnosis or other source of belief, that it is so necessary? He does not assert infallible existence of the necessity, but only his best judgment, in good faith, upon examination of his patient; and, though he does not state it to be his belief in his prescription, the law, from the nature of the case, implies that. When a doctor says that his patient needs opium, he does but express his best judgment or belief. Therefore, when the doctor in this case stated that he believed the whisky was necessary, he did but express what the law would imply. Hence, we think there is no variance.

There is another view calling for the admission in evidence of the prescriptions. The statute is precise in requiring a prescription to state the person for whose use as a medicine the liquor is to be furnished. When the jury knows the person specified, it can say whether his case requires the medicine. It is the person named for whose use as a medicine the spirits are to be furnished. Of course, the prescription ought to go in to give his name, if for no further purpose. The person named in the prescription is the young man Whitacre, not the delicate aunt; and there

is no claim that the young man needed whisky as a medicine. Was the statement in the prescription, that the liquor was necessary for him, true? It was for the jury to say.

The judgment is reversed, verdict set aside, new trial awarded, and case remanded.