# CHARLESTON

## HEFLIN v. HEFLIN.

### Submitted June 6, 1907. Decided November 26, 1907.

1. SPECIFIC PERFORMANCE—*Discretion of Court.*
   Specific performance is not a matter of right in either party, but of sound discretion in the court. If it will work injustice it will be refused. (p. 38.)

2. SAME—*Evidence.*
   In a suit for specific performance the court will look into all the circumstances of the case and will not decree specific performance unless it appears from the whole record that justice and equity will be subserved thereby. (p. 38.)

3. VENDOR AND PURCHASER—*Bona Fide Purchaser.*
   Where a vendee has a conveyance of land calling for the corners and lines laid down in a conveyance to another party without notice of any provision in the deed of such other party affecting his rights in such dividing lines, such vendee is not bound by such provision. (p. 36,)

.Appeal from Circuit Court, Doddridge County.

Bill by Hugh Leonidas Heflin against Creed C. Heflin and others. Decree for defendants, and plaintiff appeals.

*Affirmed.* ·

J. V. BLAIR, for appellant.

W. S. STUART and H. L. HAMMOND, for appellees.

McWHORTER, JUDGE:

· B. F. Heflin was the owner of various tracts of land in the county of Doddridge amounting in the aggregate to about 384 acres. On the 15th of April, 1899, said B. F. Heflin and Susan, his wife, in consideration of $650 of which $450 was paid and the vendee's notes given for the remaining $200, conveyed to B. F. Heflin, Jr., 55 acres and 32 rods of said land by metes and bounds. Afterwards they divided the residue of their real estate among their four sons, conveying to B. F. Heflin, Jr., 51 1-2 acres by deed of August 12, 1890; and on the 16th day of October, 1890, they conveyed to William S. Heflin 89 1-2 acres, to Hugh Leonidas Heflin 96 1-2 acres and to Creed C. Heflin 96 1-2 acres, mentioning in the last three deeds as a consideration a note of $270, of the vendees respectively to be paid by them. The four daughters of the vendors were to have their portions from the personal estate of the vendors, and it appears that the said three several notes of $270 each were given to assist, if necessary, to bring up the several amounts intended to be given to the said daughters.

The only question involved here is as to the dividing line between the two sons, Leonidas and Creed. One tract conveyed on the said 16th day of October, 1890, was mentioned as .containing 193 acres and one-half thereof, or 96 1-2 acres, was conveyed to each of the said sons, Leonidas and Creed: That conveyed to Leonidas by the following description: "Beginnig at a W. O. on the ridge between Jockey Camp Run, a corner to land of John Mc-Cardle, Thence a straight line to a Chestnut tree on the South edge of the County road above the residence of first parties; thence a straight line crossing the left hand branch

of Jockey Camp Run to the top of the point and with said point to Jacob Coulchans line; and with said Coulchans line to lines of Jacob Swenzel, and with his lines to a C. O. a corner to Alpheus Smith 39 1-2 acres. Thence with three lines of same N. 83 1-2 E. 44 1-4 poles to a locust; S. 59 E. 84 poles crossing Jockey Camp Run to a Hickory (now down,) and thence N. 75 3-4 E. 52 3-4 poles to the beginning, supposed to contain 96 1-2 acres and if by survey it is found to not contain 96 1-2 acres the lines to be so changed as to make one equal half of the whole tract 193 acres." And the tract conveyed to Creed upon the conditions and with descriptions as follows: " the conditions of this deed are as follows. The first parties are to hold possession of the property hereby conveyed during the natural life of each of them, the said B. F. and Susan Heflin, and after the death of the said B. F. and Susan Heflin, then the said property goes to the said Creed C. Heflin as his portion of the estate of the said B. F. Heflin, and the said Creed C. Heflin is to have all of the personal property of said parties at the time of their deaths. The said parties of the first part grant unto the said party of the second part, the following described tract or parcel of land, sitsituate in the County of Doddridge, State of West Virginia, and on the waters of Jockey Camp Run and bounded as follows: To-wit: "Beginning at a W. O. a corner to.land of John McCardle, Thence N. 86 1-2 E. 36 poles to a Pin Oak; S. 38 1-2 E. 44 1-2 poles to a stone pile; South 28 poles to a Hickory; S. 40 W. 29 1-2 poles to a C. O.; S. 42 W. 28 1-2.poles to a C, O.; S. 25 W. 17 3-4 poles to a Locust bush; S. 46 W. 20 1-3 poles to a Locust; S. 82 W. 23 4-5 poles to a stone pile; S. 42 1-2 E. 10 poles to a stone pile; S. 79 W. 10 1-2 poles to a Locust; S. 46 1-2 W. 20 poles to a Hickory and pointers; S. 32 1-4 W. 22 poles to a stone pile B. O. & Hic'y ptrs.; S 11 1-2 W. 22 poles to a Black Walnut, a corner to 51 1-2 acres conveyed to B. F. Heflin, Jr., on the 12th day of August, 1890, and with 3 lines of same N. 55 1-2 W. 17 poles to a W. O.; N. 53 W. 37 poles to a stone; S. 64 W. 37 1-2 poles to a stone in J. Colechans line; thence with same N. 54 W. 36 poles to a R. O.; and with 2 other lines of said Colechans N. 34 E. 42 poles to a stone &·W. O. ptrs.; Thence to the corner to

the tract this day conveyed to Hugh Leonidas Heflin, and thence with the lines of the same to the beginning supposed to contain 96 1-2 acres, it being one-half of the whole tract of 193 acres.'' Which deeds were duly entered of record in the clerk's office of said county on the 20th day of October, 1890. Leonidas immediately took possession of his parcel so conveyed to him and has continued in possession ever since, recognizing the division line between himself and Creed, as made in said deeds, until a few months prior to the institution of this suit in January, 1903. The vendors, together with Creed, remained in possession of that portion so conveyed to Creed and said Creed improved and worked the same up to the line of the said Leonidas' parcel, and Leonidas helped Creed to build a part of the line fence upon the recognized line between them for which Creed paid him $50 for his work. Plaintiff testifies he worked for Creed 100 days at fifty cents per day on said fence building one hundred and five pannels of fence.

At the February rules, 1903, Hugh Leonidas Heflin filed his bill in the circuit court of Doddridge county against Creed C, Heflin, B. F. Heflin, Sr., and Susan Heflin founding his claim on that clause in the deed to himself that '' if by survey it is found to not contain 96 1-2 acres the lines to be so changed as to make one equal half of the whole tract 193 acres;'' and alleging that by actual survey the tract contained 214.4 acres, and that the parcel so conveyed to him contained but 84 acres while that conveyed to Creed contained 130.4 acres, and that he had not discovered the mistake in the survey until in March, 1902; and alleging that the defendants B. F. Heflin, Sr. and Creed C. Heflin colluded together to defraud plaintiff by withholding from him his just and full share of the land; that in June, 1894, County Surveyor, Daniel Sherwood made a partial survey of plaintiff's tract as conveyed to him and reported that it contained 97 acres and 20 poles; that afterwards in March, 1902, County Surveyor, J. M. Martin surveyed the whole tract and reported that it contained 214.4 acres and that plaintiff's portion contained 84 acres and Creed's portion contained 130.4 acres, and prayed ''that said division lines may be changed, corrected and so run as to embrace and in-

clude to plaintiff the equal one-half of said entire tract of 193 acres of land, now ascertained to embrace 214.4 acres; that Commissioners for the purpose of making said change, locating and marking the true division lines between said two shares and parts of land may be appointed with full power and instructions;" and for general relief.

The defendant Creed C. Heflin demurred to plaintiff's bill in which plaintiff joined and the court overruled said demurrer and gave defendant Creed C. Heflin sixty days in which to file his answer. On the 24th of November, 1903, all the defendants filed their joint and separate answer to plaintiff's bill denying all the material allegations thereof and averring the B. F. Heflin and Susan Heflin, having advanced in years and becoming feeble and unable to look after and attend to the said lands and personal property and having no use for the same except to have a comfortable home and the necessaries of life and desiring to assist and provide for all their children, decided to divide up all their said real estate and personal property among their children while they both lived, making provision for their own support and the necesaries of life; that in pursuance of said conclusion they divided all their said real estate among their four sons—the plaintiff, respondent Creed C. Heflin, W. S. Heflin and B. F. Heflin, Jr.—and conveyed the same to them providing in the different deeds to all of them, except the said B. F. Heflin, Jr., that they should pay the sum of $270 each which as a matter of fact was to be paid to the four daughters as part of their contingent interest in said land and property, the daughters not having received any of said land; that on the said 16th of October, 1890, they executed the two deeds set out in the bill to plaintiff and defendant Creed C. Heflin by proper metes and bounds, and also coveyed other parts of the real estate to their other sons, William S. Heflin and B. F. Heflin, Jr.; that at or about the same time the parents also divided up their personal property, money and effects, or the greater part thereof, among their children and it was part of the arrangement that the said four daughters should have and receive the sum of $1,800, in cash and property among them in lieu and instead of the said daughters receiving any of

said lands, which was paid to them; that all of said conveyances were in fact gifts and free distributions of the property of the parents to the children, retaining only the life estate in the conveyance to respondent Creed C. Heflin as appears from the said deed, and that the said children took possession and control over their interests as conveyed to them and had remained in possession of the same ever since the date of the said deeds and they should all now be satisfied and contented, having now received all the earthly possessions of their said parents who should at least be permitted to die in peace without strife, annoyance and litigation in their declining years; that at the time of the making of said deeds respondent, Creed C. Heflin, was an infant not being more than sixteen or seventeen years old and was unable from his tender years to realize or know the effect of said arrangement, and while the deed made to plaintiff by his parents provides, "if by survey it is found to not contain 96 1-2 acres the lines to be so changed as to make one equal half of the whole tract of 193 acres," no such provision was inserted in respondent's deed for the other part conveyed to him by definite metes and bounds and claiming that he was no party to the said deed to the plaintiff and in no way bound by the provisions and recitals of the same and especially that recital, and was no party to any such agreement or arrangement; averring that Daniel Sherwood, after the execution and delivery of the said deeds, did run and take the bearings and distances of said lines as called for in said deeds and found the said tract conveyed to plaintiff to contain 97 acres and 20 poles; that plaintiff being raised from infancy upon said land, he and all the parties were well acquainted and very familiar with the same, and being fully advised and knowing all about these matters accepted a deed for said parcel of land by fixed and definite boundaries and was estopped and bound by such definite and fixed boundaries; that the parents retained the life estate in the part conveyed to respondent, Creed C. Heflin, and that ever since the conveyance he had cared for and provided for his aged parents and they had resided with him upon the land ever since and would continue to do so as long as they or either of them should live. Denying that there was any mistake or error to be corrected

or that they ever talked as though they would correct any error or mistake as there was none, and denied that their refusal to change the lines was a fraud upon the rights of plaintiff or that they had colluded together for the purpose of withholding from plaintiff his full share of the lands or to cheat and defraud him out of the same. And averred that by reason of said improvements placed upon his land by respondent, Creed C. Heflin, and for other reasons mentioned in the bill all of said lands had materially increased in value as alleged in the bill, for which reasons and others the plaintiff was seeking to fraudulently procure the changes in the division lines and to cheat and defraud the respondent out of said land after acquiescing in and recognizing the said division lines as the true division lines for many years; that the plaintiff had all the land that was ever conveyed to him or intended to be conveyed to him at any time, and much more than his equal share of said lands and property in value and to the full extent of his boundary and lines as containeed in his deed and as fixed and designated at the time; and prayed that the bill be dismissed and the relief prayed for therein be refused, and that the division lines of said tracts, as fixed and expressed in said deed, be sustained as the true division lines of the said land.

The plaintiff filed a special replication in writing to defendant's answer denying all the allegations of the answer setting up new matter of defense.

Depositions were taken and filed in the cause on behalf of both the plaintiff and the defendants and the cause came on to be heard on the 15th day of March, 1905, upon the bill and exhibits and other proceedings and orders, and the answer and exhibits and general replication thereto, and upon the depositions when the court was of opinion that the plaintiff was not entitled to the relief prayed for in his bill and that the same should be dismissed and it was accordingly so decreed with costs to the defendants. From which decree the plaintiff appealed and says that the court erred in refusing to grant the relief prayed for and in dismissing his bill.

It is difficult to determine from the bill, its allegations and prayer just what relief plaintiff seeks. The bill alleges

"that said land is susceptive of partition as was by said agreement and deeds intended and therein set out should be done." The prayer is for a changed and corrected running of said division lines so as to give to plaintiff one equal half of the said entire tract of 193 acres, since ascertained to embrace 214.4 acres. The lines between that conveyed to Leonidas and that to Creed were well defined lines and corners mentioned and distinctly set out in the deed to Leonidas, while the conveyance to Creed calls for those lines which mark the land conveyed to Leonidas. Plaintiff undertakes to set up in his bill an agreement on the part of B. F. Heflin, Sr., to convey to plaintiff the one equal half of said tract of 193 acres, and relies upon the clause in his deed providing for a change in the location of the division lines so as to give plaintiff the agreed quantity of land. B. F. Heflin, Sr., conveyed to Creed in fee the other portion of said tract retaining only the rights of occupancy during the life of himself and wife, Susan, and the record shows that Creed had no notice of such provision for changing the division lines, and he has a right to rely upon his own deed to define the boundaries of the land conveyed to him. While the deed provides for the possession of the land by the said B. F. Heflin, Sr., and Susan Heflin during the natural life of each of them, the record shows that it was given over entirely into the control of Creed. Plaintiff himself testifies that Creed hired him to work for him in clearing the land up to the line and building a part of the line fence on the recognized lines. In *Daugherty* v. *Marcum*, 3 Head (Tenn.) 323, it is held: "If a deed is executed reserving an occupancy during life to the donor or bargainor, the entire estate passes, as between the parties to the deed. No right would remain in the donor or bargainor except, merely, the right to possess, and perhaps, to enjoy the profits during life." And in *Haynes* v. *Boardman,* 119 Mass. 414 it is held: "There is sufficient privity of estate between a testator, a person to whom he has devised land for life, and the remainderman under his will, to establish a title by adverse possession, if the possession by the testator and his devisees is continuous for twenty years."

Not only was the land conveyed to Creed in fee, subject

only to the life estate of the vendors, but they had turned over to him the actual control of the land. Creed, being neither a tenant in common, a joint tenant or coparcener with plaintiff as to the land, cannot be compelled to partition under the statute, he is holding under a separate conveyance distinctly defining his boundaries, and had not been disturbed in the enjoyment of it since the date of his deed, some thirteen years prior to the bringing of this suit. B. F. Heflin, Sr., had divested himself of the legal title to that portion of the land from which Leonidas is claiming shall be conveyed to him enough to make up the full quantity his father agreed to convey to him, and he could get no title to it unless Creed would join with his father in a conveyance thereof, and there is no reason why he should do so being no party to such an agreement, if any there was, as claimed in plaintiff's bill.

Plaintiff alleges that the lands have materially increased in value since the said conveyances were made, not only by reason of the material improvements and growth of the country but by reason of the oil, gas and coal that have been developed and ascertained to exist in said county and in close proximity to said lands, and it is supposed at least that coal underlays said land. The answer admits all this to be true, and avers that the land by reason of the improvements placed on it by Creed and for the other reasons mentioned in the bill, had materially increased in value. It is insisted that this increase in value is the cause of the institution of this suit. It is shown by the evidence of Mrs. Gawthrop, a sister of Creed and Leonidas, that at the time the deeds were written the dividing lines between Leonidas and Creed were agreed upon by the vendors and plaintiff; and "Brother Lon was to have that boundary above this line and Brother Creed was to have what was below the boundary line to keep the old folks their life time. It was understood that he would be satisfied with that boundary." She also states that her father objected to that recital in the deed which provided for a change in the boundary lines and refused to sign, and wanted another deed drawn; that Mr. Sherwood, who was acting as the scrivener, said he could not draw it that evening; "Lon said it would make no difference, that boundary was all he wanted. And after

wards, after it was drawn up, he seemed satisfied and said he had the heart of the place and did not have to keep the old folks." Plaintiff denies this conversation. Mrs. Gawthrop is corroborated in her statements by B. F. Heflin, Sr., who further says that Leonidas has all the land that he ever intended him to have; that he gave Creed the old home part " for to take care of me and Mrs. Heflin as long as we lived and then it was his'n. It will take $1500 to keep us, me and Mrs. Heflin;" that he cleared Lon of all expenses and that Lon said he was perfectly satisfied and didn't want any more. In *Ford* v. *Euker*, 86 Va. 75, it is held: "Specific performance is not a matter of right in either party. It will be granted only when the contract is clear, distinct, and mutual. If it will work injustice, the party will be left to his action for damages. Generally he should not have been backward awaiting change of circumstances so as to enforce or abandon the contract, as may be most advantageous." And in *Anthony* v. *Leftwich*, 3 Rand. 238: "A specific execution will not be decreed where its operation would be harsh on any person concerned." In *Darling* v. *Cumming's Ex'or.*, 92 Va. 521, it is held that applications for specific performance of contracts are addressed to the sound discretion of the court, regulated by established principles; that "If there has been a change of circumstances or relations, which renders the execution of the contract a hardship to the defendant, and especially if there has been a great change in values, and it is accompanied by an unexcused delay on the part of the complainant, the change and delay together will constitute ground for denying specific performance when sought by the one in default " And further in *Dyer* v. *Duffy*. 39 W. Va. 148, it is held: "Specific performance being addressed to the sound discretion of the court, the party asking it must have been ready, willing, and prompt in the performance of those things incumbent on him, and where he has not been so, and it would impose hardship and be inequitable upon the other party, specific performance will be refused." As held in *Harrison* v. *Harrison*, 36 W. Va. 556: "The Court will look into all the circumstances of the case and will not decree specific performance unless those circumstances render such a decree just and equitable."

We are unable to see where, or how, the appellant has any equity as against Creed C. Heflin, or that he has shown himself entitled to the relief prayed for and the decree of the circuit court is therefore affirmed.

*Affirmed.*