655 S.E.2d 143

Bernard J. FOLIO, an Individual, and
Grandeotto, Inc., A Corporation,
Plaintiffs Below, Appellants

v.

CITY OF CLARKSBURG, A Municipal
Corporation, Defendant Below,
Appellee

and

Grandeotto, Inc., A Corporation,
Plaintiff Below, Appellant

v.

City of Clarksburg, A Municipal
Corporation, Defendant
Below, Appellee.

Nos. 33295, 33302.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 12, 2007.

Decided Nov. 9, 2007.

Jerry Blair, Esq., Clarksburg, WV, for Appellants.

Gregory A. Morgan, Esq., Young Morgan & Cann, PLLC, Clarksburg, WV, for Appellee.

PER CURIAM.

These consolidated cases are before this Court upon appeal of final orders of the Circuit Court of Harrison County entered on March 1, 2006, and May 25, 2006.[1] Both cases arose out the sale of property owned by the appellants and plaintiffs below, Bernard Folio and Grandeotto, Inc., to the appellee and defendant below, the City of Clarksburg. In Case No. 33295, Grandeotto sought specific performance and enforcement of right-of-way interests it allegedly retained in the property. In Case No. 33302, Grandeotto asserted fraudulent misrepresentation and/or negligent misrepresentation by the City in connection with the sale of the property. In both cases, summary judgment was granted in favor of the City.

In these appeals, Grandeotto contends that genuine issues of material fact exist in each case which preclude summary judgment. This Court has before it the petitions for appeal, the record for both cases, and the briefs and argument of counsel. For the reasons set forth below, the final orders are reversed, and these cases are remanded for further proceedings consistent with this opinion.

## I.

### FACTS

Grandeotto, Inc., is a closely-held corporation owned primarily by Bernard J. Folio and his children. Grandeotto owns and manages real estate in the City of Clarksburg and elsewhere in West Virginia. The property at issue in this case which was sold by Grandeotto to the City of Clarksburg is located between Trader's Avenue and West Pike Street in Clarksburg. The property is essentially a rectangle, 49 feet by 182.5 feet, and consists of a commercial building occupied by Rocky's Shoe Store and a seventy-

---

1. These orders were appealed separately. However, the cases were consolidated for purposes of argument and decision by order of this Court entered on January 24, 2007.

car parking lot. By letter dated November 12, 2003, the City of Clarksburg indicated that it was interested in acquiring the property for the purpose of building a parking garage.[2]

The property was conveyed by Grandeotto to the City of Clarksburg on June 8, 2004, for $220,000.00. Before the property was sold, but after negotiations for the sale began, Grandeotto executed two agreements which carved out for its own use rights-of-way across the property for pedestrian and sewer access to its other commercial property located in the area. Each right-of-way agreement specified that, "The right-of-way for pedestrian travel shall connect with Traders Alley and shall connect with Pike Street across said property ... for the purpose of ingress and egress for any and all purposes to the rear of the building of Grantee located at 110–112 South Third Street." The only way Grandeotto would be able to use the pedestrian right-of-way would be if the commercial building occupied by Rocky's Shoe Store was demolished in whole or in part because it extends across the entire width of the property. According to Grandeotto, the City represented orally and in writing that it would demolish the building after it purchased the property which would allow Grandeotto to utilize the rights-of-way.

The conveyance of the property was made subject to all exceptions, covenants, restrictions, and easements, and the aforesaid rights-of-way were expressly mentioned in the sales agreement and the deed. After the conveyance was completed, the City of Clarksburg never demolished the commercial building on the property.[3] On December 7, 2004, Grandeotto filed suit against the City of Clarksburg seeking specific performance and enforcement with respect to the rights-of-way. On March 1, 2006, the circuit court granted summary judgment in favor of the City of Clarksburg finding that Grandeotto had no valid rights-of-way in the property. The Court determined that the language in the right-of-way agreements was ambiguous

and the doctrine of merger applied. Thereafter, Grandeotto filed a second suit against the City of Clarksburg alleging fraudulent and/or negligent misrepresentation. The City filed a motion to dismiss which was converted to a motion for summary judgment by the circuit court and granted in favor of the City on May 25, 2006. These appeals followed.

## II.

## STANDARD OF REVIEW

 Pursuant to Rule 56 of the West Virginia Rules of Civil Procedure, summary judgment is required when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Accordingly, in Syllabus Point 3 of *Aetna Casualty & Surety Co. v. Federal Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963), this Court held that, "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." In Syllabus Point 1 of *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994), this Court declared that, "A circuit court's entry of summary judgment is reviewed *de novo*." With this standard in mind, we now consider whether the circuit court's award of summary judgment in these cases was proper.

## III.

## DISCUSSION

These cases were consolidated because they arose out of a single real estate transaction between the parties, and the appeals were filed within a few months of each other. However, each case presents different issues. Therefore, we will address each case separately below.

---

2. In 2003, the City of Clarksburg received a public works grant from the State of West Virginia for the construction of a new parking garage.

3. According to the City of Clarksburg, it is using a portion of the property acquired from Grandeotto along with adjacent property to construct its new parking facility.

## A. Case No. 33295

As noted above, Grandeotto initially filed suit against the City of Clarksburg alleging that the City had denied it use of the two rights-of-way. Grandeotto sought relief in the form of specific performance by demolition of the commercial building on the property that is occupied by Rocky's Shoe Store or alternatively, an award of monetary damages to compensate for the loss of use of its rights-of-way. The complaint also alleged that the City was "guilty of the act of fraud in the inducement in acquiring said parcel of land and building" and further asserted the City had misused public funds.[4]

■ This case was resolved by the circuit court through the grant of summary judgment to the City in the final order entered on March 1, 2006. In that order, the circuit court first determined that the agreements that created the rights-of-way were ambiguous as to the width and location of the rights-of-way, and therefore, were invalid. Secondly, the circuit court determined that no rights-of-way existed by reason of the doctrine of merger. The doctrine of merger provides that, "When the owner of a dominant estate acquires the fee simple title to the servient estate, an easement appurtenant to the dominant estate is extinguished." Syllabus Point 2, *Henline v. Miller*, 117 W.Va. 439, 185 S.E. 852 (1936).

After reviewing the record and pertinent authorities, we are unable able to find that the circuit court erred in these rulings. This Court has stated that "the rule governing the construction of other writings is the same as the rule relating to the construction of grants of easements; that rule provides that the rights of parties must be ascertained from the words of the grant so long as the words are unambiguous." *Farley v. Farley*, 215 W.Va. 465, 468, 600 S.E.2d 177, 180 (2004).

In *Highway Properties v. Dollar Savings Bank*, 189 W.Va. 301, 305, 431 S.E.2d 95, 99 (1993), this Court found that language in a deed stating " '[i]t is agreed and understood that there is common parking and rights-of-way or easements in, to and across all parcels for ingress and egress from and to all other parcels' " was insufficient and a "totally inadequate description" for purposes of creating an easement. Likewise, in *Hoard v. Railroad Co.*, 59 W.Va. 91, 53 S.E. 278 (1906), this Court found that a deed which described the dimensions of a right-of-way but did not establish its beginning point was insufficient to convey the right-of-way.

■ W.Va.Code § 36–3–5a(a) (2004)[5] provides that a right-of-way cannot be declared invalid because of the failure of the granting instrument to include a metes and bound description, a centerline specification, or a drawing or plat reference. However, it is well-established that there still must be a sufficient description which serves as a guide to identify the land upon which the easement is located. In that regard, this Court has held that,

> "A deed granting to a railroad company land for its right of way must contain on its face a description of the land in itself certain, so as to be identified, or if not in itself so certain, it must give such description as, with the aid of evidence outside the deed, not contradicting it, will identify and locate the land, otherwise the deed is void for uncertainty." Syllabus Point 1, *Hoard v. Railroad Co.*, 59 W.Va. 91, 53 S.E. 278 (1906).

Syllabus Point 2, *Highway Properties*.

■ The two right-of-way agreements at issue in this case were identical except for the fact that one stated that the pedestrian right-of-way would be five feet and the other

---

4. Subsequently, an amended complaint was filed. Thereafter, Grandeotto voluntarily dismissed the counts alleging fraud in the inducement and the misuse of public funds.

5. W.Va.Code § 36–3–5a(a) (2004) states, in pertinent part:

 Any deed or instrument that initially grants or reserves an easement or right-of-way shall describe the easement or right-of-way by metes and bounds, or by specification of the center-line of the easement or right-of-way, or by station and offset, or by reference to an attached drawing or plat which may not require a survey, or instrument based on the use of the global positioning system which may not require a survey ... Provided, however, That the easement or right-of-way is not invalid because of the failure of the easement or right-of-way to meet the requirements of this subsection.

specified a width of ten feet. The agreements did not establish a beginning point but, rather, indicated that the rights-of-way would "be located in the discretion of said Grantee to Pike Street over a reasonable route as necessary. . . ." Clearly, the language in the agreements is insufficient to serve as a guide to identify the location of the rights-of-way. Accordingly, we do not believe that the circuit court erred by finding the agreements were ambiguous and inadequate to convey the rights-of-way.

▮ Likewise, we cannot say that the circuit court erred in concluding that the rights-of-way, even if they were valid, were automatically extinguished upon creation because of the doctrine of merger.

It seems to be firmly established that where the owner of land over which an easement is claimed as appurtenant to another tract of land becomes also the owner of such other tract, the easement is merged in his superior estate. No one can use part of his own estate adversely to another part, and the proposition, therefore, must be true that if the owner of one of the estates, whether the dominant or servient one, becomes the owner of the other, the servitude which one owes to the other is merged in such ownership, and thereby extinguished.

*Pingley v. Pingley*, 82 W.Va. 228, 229, 95 S.E. 860, 861 (1918). *See also* 25 Am.Jur.2d *Easements and Licenses in Real Property* § 1 (2004) ("A person may not have an easement in his or her own land because an easement merges with the title, and while both are under the same ownership the easement does not constitute a separate estate."). Here, Grandeotto clearly owned both the dominant estate and the servient estate at the time the right-of-way agreements were executed. Both agreements were signed by Mr. Folio as Chairman of the Board of Grandeotto, as grantor and grantee, and were executed and recorded prior to the sale and conveyance of the property to the City.

▮ While we find no error with the circuit court's conclusions, we, nonetheless, believe that the circuit court prematurely granted summary judgment in favor of the City. In that regard, we believe that genuine issues of material fact exist concerning whether an easement was created by equitable estoppel as a result of representations made by the City at the time of the conveyance.

The general rule governing the doctrine of equitable estoppel is that in order to constitute equitable estoppel or estoppel in pais there must exist a false representation or a concealment of material facts; it must have been made with knowledge, actual or constructive of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted on; and the party to whom it was made must have relied on or acted on it to his prejudice.

Syllabus Point 6, *Stuart v. Lake Washington Realty Corp.*, 141 W.Va. 627, 92 S.E.2d 891 (1956). Accordingly, "[t]o raise an equitable estoppel there must be conduct, acts, language or silence amounting to a representation or a concealment of material facts." Syllabus Point 7, *Stuart*.

In *Shrewsbury v. Humphrey*, 183 W.Va. 291, 294, 395 S.E.2d 535, 538 (1990), this Court observed that before an easement by estoppel can be established, "there must be a showing that a representation was made and the party relied upon that representation." In *Shrewsbury*, various landowners brought an action against an adjacent landowner claiming that they had an easement over a road on his land that led to their properties. Plaintiff Roger Sexton argued that he was entitled to an easement by equitable estoppel. The evidence showed that before purchasing his property, Mr. Sexton was going to buy another tract of land. He agreed to give up the first tract of land he had been offered so a church could purchase that property. Mr. Sexton purchased property adjacent to the defendant instead based upon the defendant's representation that he could use the roadway. The defendant had been a trustee of the church that purchased the first tract of land that had been offered to Mr. Sexton. Based upon this evidence, the circuit court concluded that Mr. Sexton had an easement by equitable estoppel. This Court

affirmed that decision. 183 W.Va. at 295, 395 S.E.2d at 539.

In *Shrewsbury,* this Court explained that "the basis of equitable estoppel is fraudulent or inequitable conduct." 183 W.Va. at 294, 395 S.E.2d at 538. " '[A]n oral promise to grant an easement is not sufficient to raise an estoppel in favor of one who has acted upon it. There must be something more than a promise to grant it, even if there was a consideration for the promise, and the promisee has acted upon the promise.' " *Id.* *(quoting Cottrell v. Nurnberger,* 131 W.Va. 391, 406, 47 S.E.2d 454, 461 (1948)). In *Cottrell,* this Court observed that "generally, the violation of a promise does not, of itself, constitute fraud." 131 W.Va. at 407, 47 S.E.2d at 462. However, "[t]here may be an exception to the general rule when the maker of a promise did not intend to keep it at the time it was made and it is relied on by another and is the means by which fraud is perpetrated, in which event the nonperformance of the promise may constitute fraud." *Id.*

In this case, there is no dispute that the rights-of-way were referenced in both the sales agreement and deed that conveyed the subject property from Grandeotto to the City of Clarksburg.[6] Both documents included the following language:

> The sale and conveyance of the Property shall be and is subject to the following:
>
> . . . .
>
> b) To all exceptions, reservations, covenants, restrictions and easements contained in prior instruments now of record pertaining to the Property, including, without limiting the generality of the foregoing, those two (2) certain right-of-way agreements, one dated the 25th of November, 2003, of record in the aforesaid Clerk's Office in Deed Book No. 1359, at page 432,

and one dated the 26th day of March, 2004, of record in the aforesaid Clerks' Office in Deed Book No. 1361, at page 774.

Grandeotto argues that this language constitutes a clear representation by the City that it would honor its rights-of-way over the property. Grandeotto also notes that deposition testimony of its former attorney establishes that meetings were held with City officials prior to the conveyance for the purpose of making sure that the City would honor the rights-of-way.

Grandeotto further contends that the City never intended to honor the rights-of-way because it never planned to demolish the commercial building on the property. Grandeotto asserts that the City only made such representations to induce Grandeotto to sell the property. Grandeotto points out that the November 12, 2003, letter sent to Grandeotto by the City stated it was necessary "to acquire your property in order to demolish the structures currently situate thereon and incorporate this lot along with all the adjacent lots for the new parking facility." Grandeotto then references an internal memorandum written by the City's consulting architect prior to the sale and conveyance of the property which stated that the Mayor had indicated that the shoe store would not be demolished. Grandeotto asserts that this evidence establishes that the City represented that the commercial building on the property would be demolished when in fact the City officials involved never intended to do so.

For its part, the City maintains that it made no representation whatsoever regarding the existence or nonexistence of Grandeotto's own easements. Rather, the City claims it did no more than acknowledge documents that purported to create an easement. The City argues that it never made any

---

6. At this point, we note that while the rights-of-way were referenced in the deed, the easements were not expressly reserved. "In order to create an exception or reservation in a deed which would reduce a grant in a conveyance clause which is clear, correct and conventional, such exception or reservation must be expressed in certain and definite language." Syllabus Point 2, *Hall v. Hartley,* 146 W.Va. 328, 119 S.E.2d 759 (1961). Furthermore, no easement was granted by implication. "The well established general rule is that there is no implied reservation of an easement when an owner conveys a part of his land over which he has previously exercised a privilege for the benefit of the land which he retains unless the burden upon the land conveyed is apparent, continuous and necessary for the enjoyment of the land retained." *Stuart, supra,* 141 W.Va. at 638–39, 92 S.E.2d at 898. In this case, the rights-of-way had never been previously used or even established by Grandeotto.

representation to Grandeotto that it knew to be false and there is simply no evidence thereof. Grandeotto says otherwise. Such factual disputes are usually resolved by juries and not judges.

With regard to summary judgment, we have stated that "[t]he essence of the inquiry the court must make is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 61, 459 S.E.2d 329, 338 (1995) (citation omitted.). "In assessing the factual record, we must grant the nonmoving party the benefit of inferences, as '[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]'" 194 W.Va. at 59, 459 S.E.2d at 336 (citation omitted). In this instance, there is clearly a serious and genuine factual dispute concerning whether the City made representations to Grandeotto with regard to the rights-of-way and if so, whether the City's conduct was fraudulent such that an easement was created by estoppel. Accordingly, the circuit court's order granting summary judgment in favor of the City must be reversed.

## B. Case No. 33302

As discussed above, Grandeotto filed a second suit against the City of Clarksburg following the grant of summary judgment in the prior case. In the second complaint, Grandeotto alleged that the City made negligent and/or fraudulent representations to Grandeotto regarding its intention to demolish the commercial building on the property it was purchasing and honor the rights-of-way. Grandeotto sought compensatory, punitive, and special damages as well as an award of costs. In response, the City filed a motion to dismiss pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure arguing that the suit was barred by *res judicata* in light of the grant of summary

judgment in the prior case. Alternatively, the City argued that Grandeotto had not stated a claim for fraud, fraudulent misrepresentation, and/or negligent misrepresentation.

The circuit court converted the motion to dismiss to a motion for summary judgment [7] and ruled in favor of the City. The circuit court first determined that *res judicata* did not apply because there was no final adjudication on the merits of these claims in the prior case. The circuit court then concluded that Grandeotto had not stated a claim for fraud, fraudulent misrepresentation, or negligent misrepresentation. We disagree.

■■■■ In Syllabus Point 5 of *Kidd v. Mull*, 215 W.Va. 151, 595 S.E.2d 308 (2004), this Court held that,

> "The essential elements in an action for fraud are: '(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied on it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied on it.' *Horton v. Tyree*, 104 W.Va. 238, 242, 139 S.E. 737 (1927)." Syl. Pt. 1, *Lengyel v. Lint*, 167 W.Va. 272, 280 S.E.2d 66 (1981).

This Court further held in Syllabus Point 6 of *Kidd* that,

> "Where one person induces another to enter into a contract by false representations which he is in a situation to know, and which it is his duty to know, are untrue, he, in contemplation of law, does know the statements to be untrue, and consequently they are held to be fraudulent, and the person injured has a remedy for the loss sustained by an action for damages. It is not indispensable to a recovery that the defendant actually knew them to be false." Syl. Pt. 1, *Horton v. Tyree*, 104 W.Va. 238, 139 S.E. 737 (1927).

---

7. W.Va. R.Civ. Pro. 12(b) provides, in pertinent part:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

In granting summary judgment to the City, the circuit court found that with respect to its claims for fraud and fraudulent misrepresentation, Grandeotto could not satisfy the second element set forth in Syllabus Point 5 of *Kidd, supra.* Given the grant of summary judgment in the first suit filed by Grandeotto against the City, the circuit court reasoned that the City could not have "committed fraud by refusing to recognize questionably-structured rights-of-way that a court of law eventually ruled to be wholly invalid."

Given our decision in the prior case, the circuit court's reasoning is no longer sound. Because the circuit court based its decision in this case on the grant of summary judgment to the City in the prior case, we summarily reverse the grant of summary judgment in this action. Clearly, there are genuine issues of material fact with regard to the City's conduct at the time of the conveyance. As previously discussed, correspondence sent by the City to Grandeotto suggested that the City was going to demolish the commercial building on the property. However, an internal memorandum written by a City official before the conveyance of the property was completed indicated that the City never planned to demolish the building. Grandeotto maintains that it did not know that the commercial building on its property would not be demolished until after the sale and conveyance was completed and further contends that the City provided assurances that it would be able to utilize its rights-of-way. In contrast, the City maintains that there was never any agreement to demolish the commercial building on the property and the sales contract and deed merely acknowledged the right-of-way agreements but did not constitute a representation that the easements were valid. Given these disputed facts, the circuit court's grant of summary judgment with respect to Grandeotto's claims of fraud and fraudulent misrepresentation must be reversed.

Likewise, we also reverse the circuit court's grant of summary judgment with respect to Grandeotto's claim of negligent misrepresentation. On that issue, the circuit court found that our case law only implies that there is a cause of action for negligent misrepresentation. We disagree with this finding.

This Court has long since held that, "One under a duty to give information to another, who makes an erroneous statement when he has no knowledge on the subject, and thereby misleads the other to his injury, is as much liable in law as if he had intentionally stated a falsehood." Syllabus Point 1, *James v. Piggott,* 70 W.Va. 435, 74 S.E. 667 (1910). Moreover, Syllabus Point 6 of *Kidd* specifies that when a person induces another to enter into a contract by false representations, "[it] is not indispensable to a recovery that the defendant actually knew them to be false." In *Horton v. Tyree,* 104 W.Va. 238, 242–43, 139 S.E. 737, 738 (1927), the case from which Syllabus Point 6 of *Kidd, supra,* originated, this Court explained,

[I]t is elementary doctrine that a false representation may be made *scienter,* so as to afford a right of action in damages, in contemplation of law, in any of the following ways: (1) with actual knowledge of its falsity; (2) without knowledge either of its truth or falsity; or (3) under circumstances in which the person making it ought to have known if he did not know of its falsity. *State v. Berkeley,* 41 W.Va. 458[455], 23 S.E. 608; 1 Bigelow, Frauds, 509. A representation in respect to a matter, with the intent to influence the conduct of another, implies necessarily the belief of the party making it that the statement is true. If the fact be within his means of knowledge, and he have no knowledge of the fact, a jury would be authorized to believe that the statement was knowingly false. The question of whether the defendant should know the falsity of his representations was squarely met in *Osborne v. Holt, supra* [92 W.Va. 410, 114 S.E. 801 (1923) ]. It was there held that one who represents that a certain condition exists with the expectation that another will act thereon, when in fact he has no knowledge and regard thereto, will be as liable to another who deals with him on the basis of such representation, should it turn out to be false, as though he knew of the falsity thereof at the time it was made. "He is under a duty to know," said

the court, "that the things he represents as facts are in fact true at the time he makes the representation. It is no excuse for him to say that he did not know they were false," citing in support thereof the decided cases of *Stout v. Martin*, 87 W.Va. 1, 104 S.E. 157; *James v. Piggott*, 70 W.Va. 435, 74 S.E. 667; *Tolley v. Poteet*, 62 W.Va. 231, 57 S.E. 811; *Crislip v. Cain*, 19 W.Va. 438.

In conclusion, we believe that Grandeotto has set forth evidence in support of its claims for fraudulent and negligent misrepresentation sufficient to create genuine issues of material fact which preclude summary judgment. Accordingly, the decision of the circuit court granting summary judgment in favor of the City is reversed. In doing so, we note that in Syllabus Point 3 of *Painter*, *supra*, this Court held that, "The circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial." Likewise, at this point in the proceedings, this Court's role was not to determine the outcome of these cases but to simply determine whether or not summary judgment was appropriate. Having found that summary judgment was not proper, we remand this matter to the circuit court for further proceedings.

## IV.

### CONCLUSION

Accordingly, for the reasons set forth above, the final orders of the Circuit Court of Harrison County entered on March 1, 2006, and May 25, 2006, are reversed, and these cases are remanded to the circuit court for further proceedings consistent with this opinion.

Reversed and Remanded.

Justice BENJAMIN dissents and reserves the right to file a dissenting opinion.

BENJAMIN, Justice, dissenting:

The majority holds that summary judgment was improper because of questions of fact concerning whether right-of-ways were created by estoppel as a result of representations by the City of Clarksburg. The majority also holds that summary judgment was improper because questions of fact exist concerning the claim that the City engaged in fraud and negligent representation. I am of the opinion that those conclusions are based upon a mistaken view of the facts and circumstances concerning the parcel in question and a misapplication of the law to the status of these actions. Therefore, I respectfully dissent.

The majority treats the right-of-ways set forth in the two agreements as one and the same and remands the whole to the Circuit Court for further litigation upon the issues of estoppel, fraud and negligent representation. In fact, the invalidity of the agreements notwithstanding, the City does not contest either a pedestrian right-of-way or a sewer line in a northerly direction from the appellants' other commercial property to Pike Street. In addition, during oral argument before this Court, the City indicated that pedestrians could use an adjoining tract to walk around the building which spans the parcel on its southern border. Under the mandate of the majority, however, the City is under no further obligation to make those accommodations. Instead, the parties will now be litigating the issue of estoppel, as well as alleged fraud and misrepresentation. There is no guarantee that the appellants will prevail before a jury.

It must be remembered that the primary focus of the appellants was to obtain specific performance of the two right-of-way agreements and to require the building to be demolished, not whether they were entitled to right-of-ways, in the first instance, based upon equity. In view of the invalidity of the two agreements, even if the appellants prevail upon remand, the right-of-ways they receive may be very different from the ones the agreements attempted to create. The better approach would have been for this Court to affirm the invalidity of the agreements, based upon lack of sufficient description and merger, and remand the action to the Circuit Court for further proceedings upon the right-of-ways the City is willing to

accommodate and whether the accommodation is acceptable to the appellants.

## I.

A detailed statement of the facts before this Court is appropriate. The appellants owned two of several parcels on a block in downtown Clarksburg between West Pike Street to the north and Trader's Avenue to the south. One of the parcels owned by the appellants faces South Third Street to the east and, including structures housing various businesses, was known as 110–112 South Third Street. The other parcel owned by the appellants, located immediately behind 110–112 South Third Street, was a rectangular lot extending approximately 182 feet from West Pike Street to Trader's Avenue and was 49 feet wide. On the southern end thereof is a brick building known as the shoe store building which spans the entire 49 feet along Trader's Avenue. The remainder of the parcel was used as a parking lot.

Following the November 12, 2003, letter from the City concerning the construction of an extended parking facility, appellant Grandeotto, Inc., by agreements dated November 25, 2003, and March 26, 2004, conveyed, to itself, pedestrian and sewer right-of-ways across the Trader's Avenue parcel to the back of the 110–112 South Third Street property. Pursuant to the agreements, the sewer line was to extend from the back of the 110–112 South Third Street property to Pike Street, and the pedestrian right-of-way was to extend from the back of the 110–112 South Third Street property to both Pike Street and Trader's Avenue. Importantly, neither agreement mentioned the shoe store building obstructing the pedestrian right-of-way in the southernly direction toward Trader's Avenue.

Subsequent to an April 2004 contract of sale between the parties, a deed was made on June 8, 2004, whereby the Trader's Avenue parcel was conveyed to the City. Neither the contract of sale nor the deed provided for the demolishing of the shoe store building. Receiving less grant money from the State of West Virginia than expected, the City proceeded with a smaller parking facility for the block between West Pike Street and Trader's Avenue and began collecting rent from the tenant in the shoe store building.

In December 2004, the appellants filed an action in the Circuit Court seeking specific performance of the two right-of-way agreements and the demolition of the shoe store building by the City. The appellants filed a separate action seeking damages resulting from alleged misrepresentations made by the City surrounding its purchase of the Trader's Avenue parcel. The Circuit Court entered summary judgments in favor of the City.

## II.

The majority correctly concludes that the two agreements by which appellant Grandeotto, Inc., conveyed to itself pedestrian and sewer right-of-ways across the Trader's Avenue parcel were invalid based upon lack of sufficient description and merger.[1] The majority then states that summary judg-

---

1. With regard to the failure of the agreements for lack of sufficient description of the right-of-ways, the record demonstrates that the Circuit Court ruled correctly. There are a number of uncertainties which rendered the November 25, 2003, and the March 26, 2004, agreements invalid. No map or plat was made or referred to showing the specific location of the right-of-ways, and the record is unclear as to whether the agreements contemplated that the right-of-ways would abut the rear of the South Third Street structures or would traverse the middle of the Trader's Avenue parcel. Nor did the agreements indicate whether the pedestrian right-of-way extending in the direction of West Pike Street would overlap the sewer line extending in the same direction. Adding to that uncertainty was the provision in the agreements that the sewer line would be located pursuant to Grandeotto, Inc.'s, discretion.

Moreover, the two agreements were identical with the exception that, in the March 26 agreement, the pedestrian right-of-way was stated to be 10 feet wide rather than 5 feet. As the Circuit Court observed, however, the agreements rendered unclear whether there were two pedestrian right-of-ways and what the ultimate width would be. Thus, the Circuit Court stated in the order of March 1, 2006, that, given the standard 20 foot width for a sewer line, the appellants theoretically could claim a 15 foot pedestrian right-of-way totaling, in the direction of West Pike Street, a 35 foot right-of-way upon a 49 foot wide parcel. Adding to the problem was the suggestion of the appellants during a hearing conducted in February 2006 that the pedestrian right-of-ways could be used for vehicular traffic even though no mention of vehicular traffic was made in the two agreements.

ment was improper because of questions of fact concerning whether right-of-ways were created by estoppel. As indicated above, however, the appellants originally sought to obtain specific performance of the two agreements and to require the shoe store building to be demolished. Although questioning the validity of the agreements and whether it can be compelled to demolish the building, the City does not contest the allowance of right-of-ways across the parcel.

As long recognized, in an action for specific performance, "the court will look into all the circumstances of the case and will not decree specific performance unless it appears from the whole record that justice and equity will be subserved thereby." Syl. pt. 2, *Heflin v. Heflin,* 63 W.Va. 29, 59 S.E. 745 (1907). In particular, in syllabus point 1 of *Guinn v. Warbutton,* 64 W.Va. 76, 60 S.E. 1100 (1908), this Court observed that "[s]pecific performance will be denied, when the alleged contract, aided by extrinsic evidence of surrounding circumstances, is indefinite and uncertain in description of the land, and refers to nothing by which it may be identified with reasonable certainty." *See also,* syl. pt. 3, *Belcher v. Powers,* 212 W.Va. 418, 573 S.E.2d 12 (2002) (indicating that, to be valid, a right-of-way must be capable of being identified).

Here, as the majority confirms, the two agreements were invalid. Therefore, they cannot be specifically enforced. Nor can specific performance be ordered requiring the City to demolish the shoe store building. When appellant Grandeotto, Inc., made the two agreements, the pedestrian right-of-way extending in the southernly direction was blocked by the building. Grandeotto, Inc., did not mention the building in either agreement. Nor was the building mentioned in the contract of sale and deed when the parcel was conveyed to the City. The appellants had every opportunity to make sure that provisions for the demolition of the shoe store building were placed in the documents concerning the sale of the parcel. They failed to do so, and they cannot now specifically enforce the building's demolition upon the City.

With regard to fraud and negligent representation, the majority relies upon the City's letter of November 12, 2003, which stated that, in constructing an expanded parking facility, the appellants' Trader's Avenue parcel would need to be acquired and existing structures thereon demolished. A review of the record, however, does not suggest that the appellants were thereby induced into the sale upon the promise that the City would demolish the shoe store building. Although the building obstructed the pedestrian right-of-way set forth in the two agreements in the direction of Trader's Avenue, the building did not obstruct pedestrian access in the direction of West Pike Street. The appellants made no mention of the building in the two agreements. Moreover, neither the contract of sale nor the deed to the City provided for the demolishing of the building. The destruction of the building was not specified as part of the consideration for the conveyance. The November 12, 2003, letter served to initiate negotiations for the sale of the Trader's Avenue parcel, which was not accomplished until the making of the deed on June 8, 2004. Consequently, the letter could not have constituted a misrepresentation by the City "at the time of the conveyance" as the majority implies. The letter did not evidence fraud or actionable misrepresentation by the City as a matter of law. Given the uncertainties surrounding the planning and completion of municipal construction projects, the City cannot be expected to have had the parking facility, and its financing, absolutely finalized prior to communicating with its commercial property owners, especially where some owners may, as did the appellants, subsequently obtain counsel.[2]

---

2. In addition to the November 12, 2003, letter, an internal memorandum written by Ralph Pedersen, the City's consulting architect, stated that prior to the June 8, 2004, conveyance, the Mayor indicated that the shoe store building would not be demolished. In alleging misrepresentation, the appellants asserted that they were unaware of that information until after the sale. Nevertheless, it is undisputed that the remainder of the Trader's Avenue parcel was included in the City's parking project. The appellants never made sure that the principal documents, i.e., the two right-of-way agreements, the contract of sale and the deed, required the City to demolish the building. In all probability, the City's inconsistency was brought about by the uncertainty of the amount

### III.

The City does not contest the existence of either a pedestrian right-of-way or a sewer line in the northerly direction from the back of the 110–112 South Third Street property to Pike Street. In its memorandum in support of summary judgment, the City indicated that it would not prevent the appellants' enjoyment of either pedestrian access or a sewer line across the parcel in question. Moreover, as stated above, during oral argument before this Court, the City indicated that pedestrians could use an adjoining tract to walk around the building which spans the parcel on the southern border. Consequently, while a remand may be appropriate to work out the specifics of the right-of-ways now accommodated, the sending of this matter back to the Circuit Court for a jury trial upon the issues of equitable estoppel, fraud and misrepresentation is both unnecessary and improper. Therefore, I dissent.

of grant money the City would receive for the project.