# FALL-SPECIAL TERM.

---

## WHEELING.

### LOVE *v.* TETER.

Submitted June 17, 1884—Decided November 1, 1884.

(*WOODS, JUDGE, Absent.)

1. Fraud cannot be predicated on a promise not performed. To make it available there must be a false assertion in regard to some *existing* matter by which a party is induced to part with his money or his property. (p. 746.)

2. In morals the failure to perform a promise may be without excuse or justification; but in law false representations to authorize the rescission of a contract must be made in regard to *existing facts.* (p. 746.)

3. A cause in which a demurrer to the plaintiff's bill is sustained because the averments of the bill for setting aside the contract complained of, attempt to predicate fraud upon representations of *intentions and promises,* and not upon representations made in regard to *existing facts.*

The facts of the case are stated in the opinion of the Court.

*Ewing, Melvin & Riley,* for appellants.

*Dayton & Dayton,* for appellees.

---
*Counsel below.

Snyder, Judge:

By deed, dated October 3, 1868, Stephen Arnold conveyed to his daughter, Mary Jane, the wife of Byron Love, a tract of two hundred acres of land in Barbour county, "subject to this condition, that the deed shall not operate as a conveyance of the legal title to said land or the right to possession thereof until after the death of the said Stephen Arnold."

On June 8, 1871, after the aforesaid deed had been recorded, the said Byron Love and wife, by deed duly acknowledged and recorded, demised, granted and leased the said land to W. B. Teter, W. C. Okey, D. D. T. Farnesworth, G. A. Newlon, John S. Fisher and others, for the uses and purposes therein stated. The said lease, which is in fact simply a contract, after setting forth the consideration therefor as one dollar in hand paid and the promise and covenant of the parties of the second part to pay to the parties of the first part one quarter of one cent per bushel for all coal of every kind that may be found upon, or mined from beneath, the surface of said land, an account of which is to be kept and rendered to the parties of the first part and payments therefor to be made monthly, proceeds as follows: "The said parties of the second part take only the exclusive privileges of the coal aforesaid upon the said lands or under the surface of the ground thereof. The said parties of the first part are to have the entire control of the surface of the said lands, together with all rights and privileges of cultivating and improving the same so as not to interfere with the full enjoyment of the rights of the said parties of the second part, their heirs and assigns, in working and operating upon said lands for the purpose of taking out coals. It is agreed that the said parties of the first part have the privilege of taking all the coal that they may desire previous to the time that the said parties of the second part, their heirs and assigns, commence work taking out coal from said lands, and after work has been commenced by the said parties of the second part, their heirs and assigns, the said parties are prohibited from taking any coal except sufficient for family use for themselves and their heirs, and from any point they may desire. The said parties of the second part, their heirs, and assign by the tenor of this contract are to have the exclusive right

and privilege of taking all the said coals from said lands at the price before stated, and for that purpose are to have ingress and egress upon said lands to remove the said coal, doing, however, as little damage as possible to the lands and growing crops, and are to have the privilege to take from said lands and use all necessary materials to aid in mining said coals. And it is further agreed that the said parties of the second part, their heirs and assigns, have the option of purchasing said lands and tenements on paying to the said parties of the first part the sum of sixty dollars per acre at any time within the period of eighteen months from the date hereof, and on full payment being made, the said parties of the first part are to make, execute and deliver to the said parties of the second part, their heirs or assigns, a deed in fee simple with covenants of general warranty for the said lands and tenements."

On February 8, 1879, the said Byron Love and wife exhibited their bill in the circuit court of Barbour county against Stephen Arnold, their grantor, and the said W. B. Teter and the other grantees in said contract of lease for the purpose of cancelling and setting aside said contract. The bill was demurred to and all the defendants answered, depositions were taken and, on October 26, 1881, the court overruled the demurrer and entered a decree cancelling and setting aside said contract of lease. From this decree the defendants, John S. Fisher and A. M. Poundstone have appealed.

The substantial averments of the bill for setting aside said contract are, in effect, that two of the defendants, Farnsworth and Fisher, came to the residence of the plaintiffs "and represented to them that there was a company of capitalists, either then, or about to be organized, in which the defendants, Latham, Newlon, Poundstone and themselves were either members or component parts, or were about to become such, if they could lease permanently a certain quantity of lands in that vicinity for the purpose, in order to commence extensive operations in the excavation, manufacture and marketing of mineral coal, coal-oil, &c., *ad libitum,*" and that if they could lease a sufficient quantity of land in that vicinity for their purposes they would commence opera-

tions immediately, and if they could not, they would surrender their leases, "none of which would be retained and put upon record" in the meantime; that the plaintiffs "having confidence in the said Farnsworth and Fisher and implicitly believing their statements and representations in these particulars," they, "at the earnest solicitation of said last named defendants leased to said defendants in the manner and form and to the extent dictated by the said Farnsworth and Fisher" the said land; that the only inducement to their making the lease was the prospect of having the said operations carried on around them and the profit which was to inure to them under the terms of said contract, and the assurances that the work was to be vigorously prosecuted, or that otherwise the lease should remain unrecorded and be surrendered in a short time, and that they would not have executed the same had they anticipated the results that have followed or the fraud that was perpretrated upon them by the said defendants; that at the time of making the assurances, the defendants "had no rational hope or expectation of carrying" them into effect, but that their real object was to obtain leases for speculation by imposing upon the credulity of unsuspecting land-owners; that having thus obtained said lease they refuse to operate under it or to surrender it but have put it upon record and " claim a perpetuity thereunder in said land; that the said lease has been wholly without consideration to the plaintiffs or the defendant, Arnold, and that the same is a cloud upon their title to the land; that at the time said contract was made the defendant, Arnold, had and still has a life estate in said land and he holds the possession and control thereof; that said lease was, therefore, unlawful "and an encroachment, if not an actual disseisin, of the rights of the said defendant;" and they pray that said lease may be cancelled, &c.

It seems to me that these averments are plainly insufficient to warrant any relief, and that the circuit court should have sustained the demurrer and dismissed the bill. The title upon which the lease or contract is founded and which is exhibited with the bill, shows that the plaintiffs had no control of the land nor right to the possession either at the time of making the contract or when they instituted this suit.

They have but a remainder subject to the life estate of Stephen Arnold, who is still living and made a defendant to the suit. The contract was necessarily made subject to this life estate. The life-tenant not being a party to the contract the appellants and their associates acquired no interest or use that could affect his rights and, consequently, he has no interest in this suit. He was improperly made a party and the bill as to him was demurrable. This defendant must, therefore, be eliminated from the suit and the bill must stand or fall upon the averments in reference to the other defendants.

The bill shows that the plaintiffs have no present right to the possession of the land, that they had none when they made the contract of lease and of course could, and did, not confer any such right upon their lessees. The latter could not enter upon the land during the life of the life-tenant and this fact is a sufficient answer to any averment or suggestion of the bill that there was any fraud or failure of consideration on the ground that the lessees have not entered upon the land and commenced operations. The existence of this life estate might, perhaps, be ground of complaint on the part of the lessees, but surely the plaintiffs cannot be heard to complain of it. They must have known the extent of their title and the rights which they could confer. They conferred no right to take coal during the life tenancy and cannot, therefore, complain that the lessees have failed to do that which they have no legal right to do.

But even, if we should assume contrary to the facts, that the lessees had the right to enter immediately upon the land and commence operating, the averments of the bill are not of a character to warrant a court of equity in affording relief to the plaintiffs for their failure to do so. All the representations alleged to have been made by the lessees relate to intentions and acts to be performed in the future and not to existing facts. This applies even to the statement regarding the formation of a company of capitalists. This statement being in the alternative the court must, under a familiar rule of pleading, adopt the view that such company had not been but was merely expected to be organized in the future. The representation was not concerning an existing organization.

The oral declarations of parties, of whatever nature, do not serve to militate, either at law or in equity, against the validity of a written contract unless such declarations, of themselves, amount to a contract based upon a consideration; and this is so, whether they were made with an honest or dishonest purpose. If an outside promise or stipulation is relied upon, it should be made a part of the written contract, otherwise the party relying thereon will be held to have been content with the simple word of him with whom he has contracted, and will not be heard to complain of the consequences of his indifference to his own interests—Kerr on Fr. & M., 88, 89, 90.

"Fraud cannot be predicated on a promise not performed. To be available there must be a false assertion in regard to some *existing* matter by which a party is induced to part with his money or his property. In morals the failure to perform a promise may be without excuse or justification, but in law false representations to authorize the rescission of a contract must be made in regard to *existing facts*"—*Perkins* v. *Louges*, 6 Neb. 220; *Ranway* v. *People*, 22 N. Y. 417; *Grover* v. *Hedges*, 58 Pa. St. 504. In the case at bar, if all that is claimed to have been stated or promised by the lessees were admitted to be true, no legal fraud or failure of consideration could be predicated thereon. Certainly this is so, since the claim rests entirely upon antecedent or contemporaneous representations and assurances not deemed of sufficient importance to be inserted in the written contract.

It is not asserted in the bill that this contract is invalid because such contracts are contrary to public policy. But, even if such averment may be regarded as unnecessary to raise that question, I do not think the contract can be impeached for that reason. This may be regarded as an improvident and reckless contract on the part of the plaintiffs, and for that reason it may impair or depreciate the value of their interest in the land, but that is no legal cause for setting aside the contract. If on the other hand, the contract had been one fixing a high price for the coal to be mined from the land, it would have appreciated rather than depreciated the value of the land. Until the lessees commence operations the plaintiffs have by the terms of the contract the "privilege

of taking all the coal they may desire" from the land. So their rights cannot be restricted until the lessees begin operations, and as soon as they do begin, then the plaintiffs get all they have stipulated for, that is, one quarter of a cent per bushel for all coal mined. It, therefore, seems to me, that while the plaintiffs allege, as the ground for cancelling the contract, the failure of the lessees to operate under it, the real ground of their grievances is that they have made an improvident contract which when put in operation will yield them such an inadequate royalty that the anticipation of that result has depreciated the salable value of the land.

In no view of the averments of the bill can I see that the plaintiffs are entitled to any relief, and I am, therefore, of opinion that the decree of the circuit court should be reversed, the demurrer sustained and the bill dismissed.

REVERSED.    DISMISSED.