# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

STEPHEN H. BLAYDES, M.D.,
**Plaintiff Below, Petitioner**

**v.)  No. 24-ICA-156**          (Cir. Ct. Mercer Cnty. Case No. CC-28-2022-C-137)

**PRINCETON COMMUNITY HOSPITAL
ASSOCIATION, INC.,**
**Defendant Below, Respondent**

**FILED**

**April 29, 2025**

released at 3:00 p.m.
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Stephen H. Blaydes, M.D. ("Dr. Blaydes") appeals the March 26, 2024, order of the Circuit Court of Mercer County that granted Respondent Princeton Community Hospital Association, Inc.'s ("PCH") motion for summary judgment. PCH filed a response.[1] Dr. Blaydes filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' written and oral arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Dr. Blaydes is an ophthalmologist practicing in Bluefield, West Virginia. Dr. Blaydes followed in the footsteps of his father and grandfather; combined, they have over one hundred years practicing in Bluefield. Dr. Blaydes' medical practice consists of routine eye exams and some surgical procedures, most of which are cataract surgeries. Prior to 2020, Dr. Blaydes performed eye surgeries at Bluefield Regional Medical Center ("BRMC"). BRMC and PCH were the only two hospitals in Mercer County.

The events leading up to this appeal began on October 1, 2019, when PCH acquired BRMC. On April 10, 2020, the PCH board of directors voted to close BRMC. That same afternoon, Wayne B. Griffith met with Dr. Blaydes. Mr. Griffith had previously served as the chief executive officer at PCH and was now a strategic planning consultant for PCH's board of directors. Mr. Griffith and Dr. Blaydes had known each other for a number of years and Dr. Blaydes believed him to be a "straight shooter." During their meeting, Mr.

---

[1] Dr. Blaydes is represented by C. William Davis, Esq. PCH is represented by Gordon Copland, Esq., and Kristen Andrews Wilson, Esq.

1

Griffith informed Dr. Blaydes of several matters that would have an adverse impact on Blaydes' medical practice:

1. PCH planned to close BRMC as of June 30, 2020, and as a result, Dr. Blaydes' practice would be put in a difficult position;
2. PCH could not provide space at PCH's facility in Princeton for Dr. Blaydes' surgical practice because the surgical schedule at its facility was full and, in addition, the PCH facility would have to accommodate surgeries, other than eye surgeries, which were being transitioned from the BRMC facility to the PCH facility; and
3. Eye surgeries performed at PCH required more time than eye surgeries performed at the BRMC facility or at an ambulatory surgical center.

Dr. Blaydes testified in his deposition that Mr. Griffith told Dr. Blaydes "[t]his is what's going to happen. Bluefield Regional is closing. The surgery center is opening for you." The surgery center referenced by Mr. Griffith was an ambulatory surgery center, previously co-owned by PCH and Dr. Blaydes and located in Bluefield, known as the Regional Surgical Services ("RSS"). Dr. Blaydes had performed surgery at the RSS before it was closed in 2018 for financial reasons, and it met his needs as a surgical facility.

Dr. Blaydes advised Mr. Griffith that he had already been in the process of recruiting an experienced ophthalmologist, Dr. Blake Myers, to join his practice.[2] If the RSS did not reopen, Dr. Blaydes asserts that the closing of the BRMC facility would have left himself, and potentially Dr. Myers, with no place to perform surgery within a reasonable distance from his Bluefield, West Virginia office.[3]

Dr. Blaydes and Mr. Griffith met a second time approximately two weeks later. During the second meeting, they again discussed the reopening of the RSS. Mr. Griffith advised Dr. Blaydes that he was not in good health and would not be actively participating in the reopening of the RSS. However, Dr. Blaydes testified that Mr. Griffith told him that "the staff had the direction to get the place open," referring to the administrative staff of PCH reopening the RSS. Mr. Griffith did not name any individuals but "we all knew who would be in charge," which was "the head leadership of the hospital:" Jeff Lilley, PCH's

---

[2] Dr. Blaydes began discussions with Dr. Myers about potentially joining his practice in 2019. By February of 2020, Dr. Myers had obtained approval from the West Virginia Board of Medicine for his professional corporation. Dr. Myers officially joined Dr. Blaydes' practice in November of 2020.

[3] Dr. Blaydes testified that there are two other ambulatory surgical centers within the proximity to his office, one in Wytheville, Virginia and one in Beckley, West Virginia. However, both locations are approximately forty-five minutes from Dr. Blaydes' office. The RSS is only "a few minutes" from his office.

Chief Executive Officer, Rose Morgan, PCH's Vice President, and Frank Sinicrope, PCH's Chief Financial Officer. Dr. Blaydes believed that Mr. Griffith "was representing what the hospital . . . was going to do." In referencing the reopening of the RSS, Dr. Blaydes testified that Mr. Griffith assured Dr. Blaydes "he had the authority to make that happen" and that it was a "done deal." Dr. Blaydes was asked whether any of the PCH representatives he spoke with had said something that the representative did not believe was true. Dr. Blaydes responded that Mr. Griffith, Jeff Lilley, Rose Morgan, and Frank Sinicrope did not say anything to him that he believed was dishonest about the intended reopening of the RSS.

Between April 10, 2020, and late August 2020, PCH took steps in furtherance of reopening the RSS. During this time, Rose Morgan was assigned to "spearhead" the effort and provided periodic updates on the status of the reopening to Dr. Blaydes and Dr. Myers. On May 28, 2020, Ms. Morgan contacted Dr. Blaydes and asked: "Assuming we are able to get the RSS surgery center opened, and things are looking in progress and well thus far, would you be interested in fulfilling the role of medical director?" A few months later, Dr. Blaydes also provided information on the expected number of cases to be performed, to be used in putting together a financial *pro forma* for the PCH board. Dr. Blaydes acknowledged that the work required to reopen the RSS was "quite extensive" and knew it would involve licensure, certificates of need, as well as maintenance on the building, since it had not been used for a long period of time. In June of 2020, Dr. Blaydes and Dr. Myers went to visit the RSS and saw minor renovations, including new flooring, had been completed, and that PCH was taking "the necessary steps to reopen" the RSS.

On August 24, 2020, Jeff Lilley sent an email to Dr. Blaydes, Rose Morgan, and Frank Sinicrope, stating that he "sense[s] that the board is not happy with the lack of profitability" and that they "would know by tomorrow night." Shortly thereafter, Jeff Lilley, advised Dr. Blaydes that the PCH board of directors had voted not to reopen the RSS. Dr. Myers left Dr. Blaydes' practice, after approximately one and one-half years of being employed by Dr. Blaydes.[4]

On August 15, 2022, Dr. Blaydes filed a complaint against PCH, arguing negligent and fraudulent misrepresentation.[5] PCH filed its motion for summary judgment, arguing

---

[4] Dr. Myers' employment with Dr. Blaydes officially began on November 2, 2020, as planned, despite learning that the RSS would not be reopening. Dr. Myers left the practice in June of 2022. Although Dr. Myers was not deposed as a part of this litigation, Dr. Blaydes speculated that the primary reason Dr. Myers left was due to the drive from their office in Bluefield to the surgery center in Beckley.

[5] Dr. Blaydes explored the option of leasing the RSS from PCH, but he did not ultimately pursue that option. Thus, he filed his complaint in August of 2022, after Dr. Myers officially left his practice.

that no genuine issue of material fact remained about whether the representations made to Dr. Blaydes were fraudulent because a promise as to the future is not a statement of fact and cannot be the basis of a misrepresentation claim. The circuit court granted the motion, holding that the allegedly fraudulent statements made to Dr. Blaydes were, at most, representations or predictions about the future and that PCH and its representatives believed those statements to be true when they were made. Thus, the court reasoned that Dr. Blaydes failed to establish an essential element of his claim. The circuit court reduced its discussion of Dr. Blaydes' negligent misrepresentation claim to a footnote, holding that there was no evidence that suggested Mr. Griffith was careless or negligent in his prediction about the RSS reopening. This appeal followed.

Our review of a circuit court's entry of summary judgment is de novo. Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). In conducting a de novo review, this Court applies the same standard for granting summary judgment that a circuit court must apply: "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." *United Bank, Inc. v. Blosser*, 218 W. Va. 378, 383, 624 S.E.2d 815, 820 (2005) (quoting *Painter*, 192 W. Va. at 190, 451 S.E.2d at 756, syl. pt. 2). "Summary judgment is appropriate if, from the totality of the evidence presented . . . the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syl. Pt. 2, *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 459 S.E.2d 329 (1995). "[T]he party opposing summary judgment must satisfy the burden of proof by offering more than a mere 'scintilla of evidence' and must produce evidence sufficient for a reasonable jury to find in a nonmoving party's favor." *Id.* at 60, 459 S.E.2d at 337.

Dr. Blaydes asserts two assignments of error on appeal. First, Dr. Blaydes argues that the circuit court erred in granting summary judgment on his negligent misrepresentation claim. Second, Dr. Blaydes argues that the circuit court erred in granting summary judgment on his fraudulent misrepresentation claim. These assignments of error are closely related, and we will consolidate them for clarity. *See Tudor's Biscuit World of Am. v. Critchley*, 229 W. Va. 396, 402, 729 S.E.2d 231, 237 (2012) (per curiam) (allowing consolidation of related assignments of error).

First, Dr. Blaydes argues that the circuit court erred in granting summary judgment in favor of PCH on his fraudulent and negligent misrepresentation claims. The Supreme Court of Appeals of West Virginia ("SCAWV") has previously held that "[f]raud cannot be predicated on a promise not performed. To make it available there must be a false assertion in regard to some *existing* matter by which a party is induced to part with his money or his property." Syl Pt. 3, *Croston v. Emax Oil Co.*, 195 W. Va. 86, 464 S.E.2d 728 (1995) (quoting Syl. Pt. 1, *Love v. Teter*, 24 W. Va. 741 (1884)). The SCAWV has further explained:

4

> [T]he general rule . . . is that fraud cannot be predicated on statements which are promissory in their nature, or constitute expressions of intention, and an actionable representation cannot consist of mere broken promises, unfulfilled predictions or expectations, or erroneous conjectures as to future events, even if there is no excuse for failure to keep the promise, and even though a party acted in reliance on such promise . . .

*Janssen v. Carolina Lumber Co.*, 137 W. Va. 561, 570, 73 S.E.2d 12, 17 (1952) (quoting 37 C.J.S., Fraud, Section 11). Although representations as to the future are not generally actionable, an exception exists where a false promise is made without the intent of performance. *See Elk Refining Co. v. Daniel*, 199 F.2d 479, 481 (4th Cir. 1952); *see also Croston*, 195 W. Va. at 90, 464 S.E.2d at 732.

Dr. Blaydes conceded in his brief that the circuit court properly stated the above rule for his fraudulent misrepresentation claim but argues that it was misapplied by the circuit court. He contends that whether the representations made to Dr. Blaydes were promissory statements is an issue of material fact that should have been decided by a jury.[6] We disagree. Pursuant to *Folio v. City of Clarksburg*, 221 W. Va. 397, 405, 655 S.E.2d 143, 151 (2007) (per curiam), the basis for a fraudulent and negligent misrepresentation claim must be a statement of fact and not a promise as to the future.

Here, there is no evidence that PCH did not intend to reopen the RSS when the representations were made to Dr. Blaydes. In fact, PCH's representatives were fully informed on the intended future reopening of the RSS and continually kept Dr. Blaydes updated on the progress being made. Approximately three months prior to Dr. Blaydes receiving the news that the RSS would not be reopening, the vice president of PCH sent Dr. Blaydes an email that asked whether Dr. Blaydes would be interested in being the medical director at the RSS. Dr. Blaydes also provided PCH with information on the expected number of cases used to create a financial *pro forma* that allowed PCH to assess the financial feasibility of the project. Dr. Blaydes and Dr. Myers visited the RSS while it was undergoing renovations and saw that progress was being made towards the goal of reopening the RSS. The record indicates that at all times the parties intended for the RSS to reopen but, due to the financial feasibility of the project, the PCH board of directors

---

[6] Dr. Blaydes also contends that that the circuit court erred by only addressing one of Mr. Griffith's statements about the reopening of the RSS, the statement that "the RSS was going to open." Dr. Blaydes points to various other descriptions from his deposition of Mr. Griffith's statements that he believes the circuit court did not address. We disagree. The circuit court addressed "statements" Mr. Griffith made to the effect that the RSS would reopen, not just one. Moreover, even if the circuit court failed to address some of the statements quoted in Dr. Blaydes' brief, it would be harmless error, because each of these statements is essentially a recharacterization of the idea that PCH was going to reopen the RSS.

voted not to proceed. Therefore, the circuit court did not err in granting summary judgment on Dr. Blaydes' fraudulent misrepresentation claim.

As to the negligent misrepresentation claim specifically, the circuit court held:

As to the claim that there was "negligent misrepresentation," Dr. Blaydes again has no false statement of fact for such basis. The only possible negligence identified by Dr. Blaydes was the statement by Wayne Griffith that the RSS "was going to open." Dr. Blaydes did not identify any information or evidence that suggested that Mr. Griffith was careless or negligent in his prediction about the future. Moreover, in discussing negligent misrepresentation, our Supreme Court has noted that any promises as to the future also "impl[y] necessarily the belief of the party making it that the statement is true." *Folio v. City of Clarksburg*, 221 W. Va. 397, 405, 655 S.E.2d 143, 151 (2007). There is no evidence, or even claim, that Mr. Griffith was dishonest, and Dr. Blaydes testified to the contrary. Summary judgment is therefore proper on the negligence claim as well.

Dr. Blaydes argues that, unlike fraudulent misrepresentation, a negligent misrepresentation claim can be based on a promise about the future. Dr. Blaydes bases this distinction solely on the SCAWV's characterization in *Folio* that a negligent misrepresentation claim requires an "erroneous statement." *See Folio* at 405, 655 S.E.2d at 151 (holding that "[o]ne under a duty to give information to another, who makes an *erroneous statement* when he has *no knowledge* on the subject, and thereby misleads the other to his injury, is as much liable in law as if he had intentionally stated a falsehood") (emphasis added). Dr. Blaydes contends that an erroneous statement is distinct from a false statement and necessarily includes promises about the future.

We find no basis for Dr. Blaydes' expansive construction of the term "erroneous statement" in *Folio* and decline to adopt it. Rather, *Folio* simply confirms liability may be found in certain circumstances where a statement of fact, not a promise, was made without any basis whatsoever. There is no evidence in this case that PCH's representatives spoke without any knowledge on the reopening of the RSS. In fact, Dr. Blaydes was kept updated throughout the process leading up to the board's vote in August of 2020. Accordingly, we cannot find that Mr. Griffith, or any representative of PCH, made statements without any knowledge as to whether the RSS would reopen. Accordingly, the circuit court did not err in granting summary judgment on Dr. Blaydes' negligent misrepresentation claim.

Second, Dr. Blaydes argues that there was an implied representation that the PCH board had approved the reopening of the RSS when he spoke with Mr. Griffith. Dr. Blaydes argues that the representations made by PCH, through Mr. Griffith, were false representations of an existing fact of the state of mind of PCH's board of directors because the PCH board of directors had not yet approved the reopening of the RSS. *See Elk Refining*

*Co. v. Daniel*, 199 F.2d 479, 481 (4th Cir. 1952) (holding that "[t]he presence or lack of a positive intention at any time is a factor of a state of mind, and a misstatement of that mental position is a false representation of an existing fact"). In response, PCH asserts that the lack of board approval did not mean that PCH did not intend to do what management planned and proposed to the board.

We agree with PCH. In making this "implied representation" argument, Dr. Blaydes effectively argues that any promise of future performance by an entity's representative is a misrepresentation of the entity's state of mind unless the entity has already taken a binding step toward fulfilling that promise. Such an interpretation would greatly expand the scope of liability of corporations and other legal entities in fraudulent and negligent misrepresentation claims, as it would convert every promise of future performance into an implicit statement of fact that the entity had already taken binding steps towards performance.[7] This rule is not supported by *Elk Refining Co.* or, more importantly, any binding West Virginia caselaw. Accordingly, we decline to adopt it now and find that the circuit court did not err in granting summary judgment on this issue.

On appeal, Dr. Blaydes similarly argues that Mr. Griffith misrepresented his authority to reopen the RSS. In his brief, after asserting that Mr. Griffith's statements that the RSS would be reopened were erroneous, Dr. Blaydes claims in passing that Mr. Griffith's statement that he "had the authority to make [reopening the RSS] happen" was also erroneous. At oral argument, Dr. Blaydes' counsel focused on this statement as one of the critical misrepresentations in the case.

As an initial matter, this argument is not properly before this Court, because it was not raised below. We have previously recognized the "general rule [that] an appellate court will not consider an issue raised for the first time on appeal." *PITA, LLC v. Segal*, 249 W. Va. 26, 40, 894 S.E.2d 379, 393 (Ct. App. 2023). In his complaint, Dr. Blaydes specifically premised his claims on PCH's representations that it would reopen the RSS, not Mr. Griffith's statement about his authority. Similarly, while Dr. Blaydes quoted Mr. Griffith's statement about his authority in the factual section of his response to the motion for summary judgment, in arguing that his claims survived summary judgment, he relied on PCH's statements about reopening the RSS as the basis for his claims. Similarly, at the hearing on PCH's motion for summary judgment, Dr. Blaydes' counsel pointed to PCH's statements on reopening the RSS as the misrepresentations supporting his claims. Therefore, the record demonstrates that in the circuit court, Dr. Blaydes based his claims

---

[7] Moreover, while Dr. Blaydes only advocates for this principle in the context of a representation made on behalf of an entity like PCH, there is no logical reason why, if adopted, it would not also apply to an individual's promise of future performance. For instance, by Dr. Blaydes' logic, a person's promise "I'll fly with you to California next month" would likely be a misrepresentation of their own state of mind unless they had already purchased a plane ticket.

on PCH's representations—through Mr. Griffith—that it was going to reopen the RSS, not Mr. Griffith's statement about the scope of his authority with PCH.

Moreover, even assuming the argument that Mr. Griffith misrepresented his authority is properly before this Court, Dr. Blaydes fails to explain how this misrepresentation, in a vacuum, could be the basis for his claims. Both before the circuit court and on appeal, the substance of Dr. Blaydes' argument has been that he incurred expenses, including hiring Dr. Myers, based on PCH's representations that it would reopen the RSS. However, Dr. Blaydes does not attempt to argue that he hired Dr. Myers and incurred expenses based only on Mr. Griffith's statement that he had the authority to reopen the RSS. Therefore, even in the context of Mr. Griffith's misrepresentation of his authority, Dr. Blaydes only relied on that statement in tandem with PCH's representations about reopening the RSS, which, as addressed above, are promises about future performance that cannot support fraudulent or negligent misrepresentation claims.

Therefore, because Dr. Blaydes' argument that Mr. Griffith misrepresented his authority with PCH is not properly before this Court and because Dr. Blaydes' claims related to that statement still hinge on promises of future performance, we find no basis to reverse the circuit court on this issue.[8]

---

[8] The dissent contests the conclusion that Dr. Blaydes' attempt to base his fraud and negligent misrepresentation claims on Mr. Griffith's statement that he "had the authority to make [reopening the RSS] happen" is not properly before this Court. While the dissent concedes that Dr. Blaydes did not identify this alleged misrepresentation in his complaint, it concludes that the allegations in the complaint were "of no consequence" at the summary judgment stage. However, the SCAWV has held that "[t]he failure to plead particularly the circumstances constituting fraud . . . inhibits full review of the substance of the claim of fraud by this Court on appeal from the grant of summary judgment." Syl. Pt. 4, in part, *Croston v. Emax Oil Co.*, 195 W. Va. 86, 464 S.E.2d 728 (1995).

Regardless, the dissent also disputes the more critical conclusion that Dr. Blaydes failed to identify this alleged misrepresentation as a basis for his claims at summary judgment. While the dissent cites portions of the record where Dr. Blaydes supposedly argued below that he relied on Mr. Griffith's alleged misrepresentation of his own authority, review of these citations demonstrates the opposite. Rather, these portions of the record—a page from Dr. Blaydes' response to PCH's motion for summary judgment and two pages of a transcript from the hearing on that motion—show that Dr. Blaydes' counsel specifically did not invoke this statement. In opposing summary judgment, it was Dr. Blaydes' responsibility to point "to specific facts demonstrating that, indeed, there is a 'trialworthy' issue." *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 60, 459 S.E.2d 329, 337 (1995). He did not, and we decline to fault the circuit court for not addressing an argument that—at best—was not clearly raised below.

8

Moreover, Dr. Blaydes' brief on appeal belies the dissent's argument that Dr. Blaydes intended Mr. Griffith's representation that he "had the authority to make [reopening the RSS] happen" to be a basis for the fraud or negligent misrepresentation claims in the circuit court. In both the negligent misrepresentation and fraud sections of his brief, Dr. Blaydes argues that the circuit court failed to address certain statements Mr. Griffith made that Dr. Blaydes identified below as bases for both claims. Dr. Blaydes quotes nine specific alleged misrepresentations related to the reopening of the RSS that he believes the circuit court failed to address. Conspicuously absent from this list of alleged misrepresentations is Mr. Griffith's statement that he "had the authority to make [reopening the RSS] happen." Instead, Dr. Blaydes' only argument on appeal about this statement came in the closing paragraphs of his argument in support of the negligent misrepresentation claim. Having thoroughly argued that claim based on Mr. Griffith's statements about the reopening of the RSS, Dr. Blaydes asserted in passing that Mr. Griffith's statement about his authority "was also erroneous because PCH's Board of Directors had not authorized the reopening of RSS." This passing reference was inadequate to preserve the argument, particularly in light of Dr. Blaydes' failure to include this statement when listing the specific misrepresentations at issue. *See State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996) (issues "mentioned only in passing" are not considered on appeal); W. Va. R. App. P. 10(c)(7).

Only at oral argument did Dr. Blaydes' counsel seek to make Mr. Griffith's statement that he "had the authority to make [reopening the RSS] happen" the fulcrum of his claims. There, counsel identified it as one of three critical misrepresentations in the case, the other two of which—that the reopening was "a done deal" and that "the staff had the direction to get the place open"—were included in Dr. Blaydes' brief as misrepresentations that the circuit court allegedly failed to address. Having been clearly argued as a basis of Dr. Blaydes' fraud claim for the first time, Mr. Griffith's statement on his authority, and the circuit court's alleged failure to address that statement, became the primary focus of oral argument. As the SCAWV has recognized, this was unfair both to PCH's counsel and this Court:

> [L]imiting a party to asserting [at oral argument] the issues and arguments in an appeal to those clearly set forth in a party's brief is important because raising an issue or argument in an appellate brief provides the necessary notice to both this Court and the opposing party as to what they confront so each can adequately prepare and discharge their respective responsibilities.

*Argus Energy, LLC v. Marenko*, 248 W. Va. 98, 103, 887 S.E.2d 223, 228 (2023).

Contrary to the dissent's conclusion, Dr. Blaydes did not preserve the argument that Mr. Griffith's statement that he "had the authority to make [reopening the RSS] happen" was a fraudulent or negligent misrepresentation. Dr. Blaydes did not plead this as a specific

Accordingly, the March 26, 2024, order of the Circuit Court of Mercer County is affirmed.

Affirmed.

**ISSUED:** April 29, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear

**DISSENTING:**

Judge S. Ryan White

WHITE, J., dissenting:

I respectfully dissent from the majority's decision to affirm the circuit court's order granting PCH's motion for summary judgment. The majority fails to recognize that genuine issues of material fact are present; therefore, summary judgment was wholly inappropriate below. Accordingly, reversal of the lower court's ruling is warranted. The decision below, and that of the majority, does not adequately address the alleged misrepresentation which could be the basis for Dr. Blaydes' misrepresentation claims. Therefore, I must dissent.

West Virginia law regarding summary judgment is well-settled. "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. Pt. 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York,* 148 W. Va. 160, 133 S.E.2d 770 (1963). Further, "[s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing of an essential element of the case that it has the burden to prove." Syl. Pt. 4, *Painter v. Peavy*, 192 W. Va. 189, 489 S.E.2d 755 (1994). Put simply, "[t]he circuit court's function at the summary judgment stage is not to weigh the evidence and determine the

---

circumstance of fraud in his complaint, he did not clearly identify it in response to summary judgment below, he did not argue it clearly in his brief on appeal, and he argued it directly for the first time at oral argument. This is inadequate to put the argument before this Court.

10

truth of the matter, but is to determine whether there is a genuine issue for trial." *Id.* at Syl. Pt. 3. *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

However, with respect to the nonmoving party, defeating a summary judgment motion requires producing evidence sufficient for a jury to rule in the nonmoving party's favor:

> [T]he party opposing summary judgment must satisfy the burden of proof by offering more than a mere "scintilla of evidence," and must produce evidence sufficient for a reasonable jury to find in a nonmoving party's favor. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512, 91 L.Ed.2d at 214 . . . Therefore, while the underlying facts and all inferences are viewed in the light most favorable to the nonmoving party, the nonmoving party must nonetheless offer some "'concrete evidence from which a reasonable . . . [finder of fact] could return a verdict in . . . [its] favor'" or other "'significant probative evidence tending to support the complaint.'" (citations omitted).

*Painter* at 192-93, 451 S.E.2d at 758-59. As the moving party below, PCH had the burden of proving that there were no genuine issues of material fact, and that it was entitled to judgment as a matter of law. Given the record on appeal, PCH did not meet this burden. Conversely, Dr. Blaydes has offered "more than a mere 'scintilla of evidence'" and has produced evidence sufficient for a reasonable jury to find in his favor.

The majority largely bases its decision on the notion that promises as to future events cannot be the basis of fraudulent misrepresentation or negligent misrepresentation claims. While it is correct that promises as to the future, generally, cannot be the basis of a fraudulent misrepresentation claim, that generalization only goes so far. The record contains evidence that PCH misstated facts in its representations to Dr. Blaydes, which is not the same as a promise as to the future. The SCAWV has stated that, "[f]raud cannot be predicated on a promise not performed. To make it available, there must be a false assertion in regard to some *existing* matter by which a party is induced to part with his money or his property." Syl. Pt. 1, *Love v. Teter,* 24 W. Va. 741 (1884). *See also Janssen v. Carolina Lumber Co.,* 137 W. Va. 561, 73 S.E.2d 12 (1952); *Croston v. Emax Oil Co.,* 195 W. Va. 86, 464 S.E.2d 728 (1995).

In his deposition, Dr. Blaydes testified that Mr. Griffith stated that "the staff had the direction to get the place open" *and* that, on behalf of PCH, Mr. Griffith "had the authority to make that happen." (A.R. 54). This was certainly not a promise as to the future; it was a present representation by Mr. Griffith as to the authority he, on behalf of PCH, had at that moment to move the project forward. Worse, the circuit court did not address this representation in its order granting summary judgment.

11

The majority apparently recognizes that Mr. Griffith's statement is problematic and, as such, tries to claim that the issue is not properly before this Court. Alternatively, the majority seems to concede that the statement was a misrepresentation of a present fact but then tries to minimize its significance by claiming Dr. Blaydes only made the statement in conjunction with a future promise, and that Dr. Blaydes did not attempt to argue that he relied solely upon Mr. Griffith's statement when he decided to hire Dr. Myers. *See Blaydes v. Princeton Cmty. Hosp. Ass'n, Inc.,* No. 24-ICA-156, slip op. at 7 (W. Va. Ct. App. April 30, 2025).

However, the majority's reasoning is flawed. First, the majority's conclusion that Dr. Blaydes' argument that Mr. Griffith misrepresented his authority to reopen the RSS was "not properly before this Court, because it was not raised below" is simply incorrect. Dr. Blaydes made this argument both in his response to the motion for summary judgment and during the hearing on that motion. (A.R. 131, 215-216). Further, the majority correctly notes that Dr. Blaydes did not include the arguments regarding Mr. Griffith's statements in his complaint, but that is of no consequence in this appeal. At the summary judgment stage, following discovery, a plaintiff's arguments are not confined to the allegations made in the complaint. The circuit court was charged with assessing the record as a whole to determine if genuine issues of material fact existed, and so, was permitted to consider these arguments, as is this Court. Nevertheless, Dr. Blaydes' complaint and the record below clearly demonstrate that he has consistently raised these claims and based them upon Mr. Griffith's representations to him, representations which Mr. Griffith made on behalf of PCH.

Second, the majority's reasoning for ignoring the potential current fraudulent misrepresentation by Mr. Griffith (because Dr. Blaydes did not specifically argue he relied solely upon that particular misrepresentation in hiring Dr. Myers) is unsound. The reasoning behind a rule barring promises as to the future from being actionable in fraudulent misrepresentation is that it is understood that people who make promises do not have control of every factor affecting future outcomes. Here, if Mr. Griffith had not made the alleged fraudulent misrepresentation that "he had the authority to make it happen," then it might have been understood that Mr. Griffith, and by extension PCH, had no control over whether PCH's board would approve going forward with the reopening of the facility.

But Mr. Griffith's statement went beyond promising a future action. In making this statement, Mr. Griffith alluded that PCH had already approved moving forward with the reopening of the RSS and that he was speaking for PCH. Given this, a jury could find that Mr. Griffith's alleged statement was a misstatement of fact pertaining to a key factor about whether the facility would be reopened. In fact, the lack of board approval appears to be the actual reason PCH did not move forward with reopening the facility. In other words, a material misrepresentation of a present, existing fact which is also a misstatement about a known contingency of a future promise can be the basis for a fraudulent misrepresentation

claim.[9] Dr. Blaydes does not have to demonstrate that he took action solely based on the fraudulent misrepresentation made by Mr. Griffith; he just needs to show that the fraudulent misrepresentation was made in a way to suggest that any contingency to the promise was likely eliminated, which would make the promise more likely to be fulfilled.

It should not be forgotten that the plan to reopen the RSS originated with Mr. Griffith and PCH, not Dr. Blaydes. Mr. Griffith reached out to Dr. Blaydes for a meeting (which occurred that same day at Mr. Griffith's office at PCH) at which time Mr. Griffith, on behalf of PCH, made the representations to Dr. Blaydes about reopening the RSS. A representative of the hospital approached Dr. Blaydes, not the other way around. Dr. Blaydes' argument is that these representations induced him to spend significant sums of money to expand his practice to meet the needs anticipated by the RSS reopening. This expansion even included going forward with the recruitment and the expenditure of money to hire another doctor for his practice. However, despite Mr. Griffith's representations, months later while the reopening and remodeling project was in progress, and after Dr. Blaydes spent the money to expand his practice, PCH abruptly and unilaterally changed its mind and abandoned the plan to reopen the RSS.[10]

---

[9] "[Fraud also arises] where the promise [about the future] was accompanied by statements of existing fact which show the promisor's ability to perform the promise and those statements were false." *Apr. Beguesse, Inc. v. Rammell*, 156 Idaho 500, 510, 328 P.3d 480, 490 (2014).

According to the *Restatement (Second) of Torts*, § 525, comment f:

f. Representation implied from statement promissory in form. Similarly a statement that is in form a prediction or promise as to the future course of events may justifiably be interpreted as a statement that the maker knows of nothing which will make the fulfillment of his prediction or promise impossible or improbable. Thus a statement that a second-hand car will run fifteen miles on a gallon of gasoline is an implied assertion that the condition of the car makes it capable of so doing, and is an actionable misrepresentation if the speaker knows that it has never run more than seven miles per gallon of gasoline.

Restatement (Second) of Torts § 525 (1977).

[10] It appears from the record that the parties dispute whether the PCH Board actually voted to not reopen the RSS. Dr. Blaydes asserts the records PCH Board produced in response to his discovery requests do not reflect there was ever a vote. (A.R. 131-132). However, PCH asserts that its board voted. (A.R. 38-39). Accordingly, this appears to be another disputed fact.

13

Given the record on appeal, the parties are clearly asserting genuine disputes regarding the existence of, or inferences to be drawn from, material facts. In summary, Dr. Blaydes offered the necessary proof sufficient to create a triable issue of fact to defeat PCH's motion for summary judgment.

For these reasons, I dissent from the majority's decision affirming the circuit court's order granting PCH's motion for summary judgment.